### HOLMES *vs.* HOLMES.

Independent of the act of April 7th, 1848, courts of equity, in suits for divorce or separation, have the power of restoring to the wife the whole, or a portion, of her property, and of restraining the husband from receiving gifts or legacies to her after such divorce or separation. And this too, as well on a bill filed by the wife, as when the husband comes into a court of equity to obtain the possession,

Holmes *v.* Holmes.

Nor is it a sufficient objection to the exercise of this power that a provision was made, in the decree of separation, for the wife's support and maintenance.' Yet where, after the making of such decree, the wife is permitted by the court to receive a legacy given to her, which is sufficient to furnish her a reasonable support, the husband should be discharged from his liability for alimony.

The act of April 7th, 1848, for the more effectual protection of the property of married women, so far as it was intended to affect existing rights of property in married persons, is unconstitutional and void.

As respects property, the contract of marriage must stand upon the same footing as other contracts. *Per* BARCULO, J.

By virtue of the marriage relation the husband becomes entitled to the choses in action of the wife, including legacies and distributive shares. And although this right may not be expressed in the terms of the agreement, it is an incident to the relationship. It is the law of the contract, which enters into, and forms a part, of it. Hence a statute which destroys this right impairs the obligation of the contract, and comes within the inhibition of the federal constitution. *Per* BARCULO, J.

In Equity. The bill in this cause was filed by the wife against her husband, to restrain him from receiving, and appropriating to his own use, a legacy bequeathed to her after she had obtained a decree against him for a separation *a mensa et thoro*. The cause was heard upon pleadings and proofs taken in open court. The facts are detailed in the opinion of the court.

*Wm. Wilkinson*, for the plaintiff.

*Wm. Eno*, for the defendant.

BARCULO, J. The parties in this cause were separated *a mensa et thoro* by a decree rendered before me as vice chancellor, on the 26th day of January, 1847, for the cruel and inhuman treatment of which the defendant had been guilty towards the plaintiff. That decree was affirmed on appeal at the general term held in Dutchess county, on the 6th day of June, 1848. It is therefore judicially established that the defendant has been guilty of such misconduct as renders it unsafe and improper for his wife to cohabit with him, or be under his dominion and control. Since that decree was pronounced, a share of the estate given to the plaintiff by her father's will,

Holmes *v.* Holmes.

subject to the life estate of her mother, has, by the death of the latter, fallen due. The husband, as sole surviving executor, was authorized by the will, to sell the real estate and divide the proceeds among the parties entitled thereto. After he had advertised the premises for sale, and before the day arrived, this bill was filed and an injunction issued, restraining him from receiving the wife's share of the proceeds. The sale was made on the 14th of March last, and the share in controversy— amounting to $2346,06—has been held subject to the order of the court. The question now arises, which of these two claiming parties is entitled to this sum?

The rule of the court of equity, in such cases, follows that of natural justice : the husband, by his violation of the marriage contract, forfeits all equitable right to the wife's property. Even when the property has belonged to her before the separation, and has not been reduced into actual possession by the husband, courts of equity will restore it to the wife. Much more, in a case like the present, when the property falls to the wife after the separation, should the equitable power of the court be interposed, to prevent the husband from receiving it by virtue of that relation which he himself has disregarded and violated. It would be difficult to conceive of a more plain and palpable outrage upon justice than to permit this old lady to be deprived of her whole share of her father's estate, by an exercise of his marital rights, on the part of a husband whose cruelty has driven her from an honorable home, and occasioned a permanent suspension of the marriage contract. The authorities are full on this subject. (*Van Duzer* v. *Van Duzer*, 6 *Paige*, 366. *Fry* v. *Fry*, 7 *Id.* 461. *Renwick* v. *Renwick*, 10 *Id.* 420.)

It is contended on the part of the defendant, that inasmuch as the statute (2 *R. S.* 146, § 46,) gives the wife the property absolutely, which she has at the time of pronouncing a decree *dissolving the marriage*, and is silent, in this respect, in cases of a *separation from bed and board*, that therefore, in the latter case, a decree for alimony only can be made. I do not so understand the law. I understand that courts of equity, in

cases of divorce or separation, independent of the statute refer-
red to, have the power of restoring to the wife the whole or a
portion of her property, and of restraining the husband from re-
ceiving gifts or legacies to her after such divorce or separation;
and this too, as well on a bill filed by her, as when he comes
into a court of equity to obtain the possession. (*Clancy's Rights
of Married Women*, 446.)   Nor is it a sufficient objection to
the exercise of this power, that a provision was made, in the
decree of separation, for the wife's support and maintenance.
The amount of alimony was fixed at a very small sum; being
governed by the moderate circumstances of the defendant.   It
will however be but just, in allowing the wife to take the leg-
acy in question, which will furnish her a reasonable support of
itself, to discharge the defendant from his liability for alimony.
The proper decree to have been entered under the old rule,
would direct the investment of the moneys for the benefit of the
wife during her life, with power to dispose of the proceeds by
will; (*Burr* v. *Burr*, 10 *Paige*, 20; *and* 7 *Hill*, 207;) and
enjoining the husband from intermeddling with them.

But a recent statute on the subject of the rights of married
women remains to be considered.   The 2d section of the " act
for the more effectual protection of the property of married wo-
men," passed April 7th, 1848, declares that " the real and per-
sonal property, and the rents, issues and profits thereof, of any
female now married, shall not be subject to the disposal of her
husband; but shall be her sole and separate property, as if she
were a single female, except so far as the same may be liable
for the debts of her husband heretofore contracted." (*Laws of
1848, p.* 307.)   It seems to have been the object of the legisla-
ture to abrogate the old doctrine which regarded the husband
and wife as *one* person, at least so far as property is concerned.
The ancient muniments, hitherto deemed " essential to the in-
violability of the nuptial contract and to the maintenance of
the institution of marriage," are crumbling and falling before
the batteries of modern reformers.   The old landmarks are be-
ing removed.   The principles of former times are fast receding
from view.   The wisdom of the last century seems but folly in

the present. The experience of the sages and venerable men who have preceded us, is as nothing, compared to the intuition of the Solons of this "progressive" age. Legal forms, authorities, precedents, maxims, adjudications, the knowledge of the past, the learning of the present, all fade away and disappear before the dazzling brightness of the new era. Whether these sudden and violent innovations in a science which, of all others, is most emphatically the result of *time* and *experience*, are to prove beneficial to society, it remains to be seen. All we have to do is, to carry out the laws laid before us by the legislature, in their true intent and spirit; leaving the consequences where they properly belong.

The act in question, if valid, most clearly gives this money to the plaintiff. It falls within the definition of "real and personal property" of a married female, which the statute declares "shall not be subject to the disposal of the husband, but shall be her sole and separate property." This property had never been reduced into possession by the husband; it is in the custody of the court. But even if it had been in the possession of the husband, it would rather seem, that so long as it could be traced it must be deemed the wife's; unless creditors had obtained a lien. For the statute goes on to say that the property shall be hers, " as if she were a single female, *except so far as the same may be liable for the debts of her husband heretofore contracted.*" This language is inconsistent with the idea that her rights were confined to such property as had not gone into possession of the husband before the passage of the act; for the latter clause would be without meaning, applied to such property. Whether the act is to be construed to vest in the wife all such property as she has at any time owned which the husband has, and which is not liable to creditors, it is not necessary now to decide. Nor shall I stop to inquire how, in ordinary cases where husband and wife are living together, the claims of the latter are to be enforced against the former; or how she is to collect the " rents, issues and profits" of her estate from third persons who may dispute her right to them; or how she is to enter into contracts for leasing her realty, or in whose

name her bonds and mortgages and undertakings are to be taken and enforced; whether she is authorized to sue and be sued, or speaking according to the concise and improved system, bring *an action* and have an action brought against her? and if so, whether the husband is to have the like pleasure in regard to her; whether in consequence of her keeping her own property she is to pay her own debts, or whether the husband is still to enjoy that remaining privilege; whether, in the face of this statute, which declares that her property *shall not be at the disposal of her husband,* she can, *by her consent,* authorize him to use and dispose of it. These, and numerous other questions which must soon arise, I leave for future consideration.

As applicable to the present case, this statute accords with the equitable rule, so far as it gives the wife the benefit of this money; but it differs from it, in giving it to her *absolutely,* instead of investing it for her use. The statute declares that it shall be her sole and separate property, as if she were a *single female.* Now if the plaintiff were a single female of full age, I am not aware of any authority in this, or any other, court by which her property could be kept out of her actual possession, and vested in trustees for her use and benefit. We have no more power, under this statute, to take charge of the estates of married women than of men. All are placed upon the same footing. The statute operates as a *divorce pro tanto.*

But an objection to the validity of the act of April 7th, 1848, naturally suggests itself, arising out of the fact that the marriage of the parties and the vesting of the money were prior to the passage of the act. By the law as it then stood, the husband was entitled to reduce the legacy to possession and use it as his own property. The question then arises, whether the legislature can divest him of this right, and give the property to the plaintiff.

I think the act in question cannot affect the rights of these parties. *First.* Because it is beyond the scope of legislative authority to destroy vested rights to property. I have recently had occasion to examine this subject at some length in a cause

argued at the general term ; and will merely refer to the opinion in that case, with the remark that my brethren both fully concurred in placing the decision in that case upon this sole ground. (*The People, ex rel. Fountain and others,* v. *The Supervisors of Westchester Co. ante, p.* 64.) *Secondly.* To allow the act to take this property from the defendant would be a violation of that clause in the constitution of the state which declares that " no person shall be deprived of life, liberty or *property,* without due process of law." (*Taylor* v. *Porter,* 4 *Hill,* 140.) *Thirdly.* The act is void as regards rights of property existing prior to its passage, by virtue of the marriage relation, because it *impairs a contract,* within the inhibition of the federal constitution.

I am aware that learned judges have entertained different opinions, as to the power of the legislature over the marriage contract. In the celebrated *Dartmouth College case,* (4 *Wheat.* 518,) Justice Story denied the authority of the legislature to dissolve the marriage obligation without a breach on either side. In the case of *Maguire* v. *Maguire,* (7 *Dana's Rep.* 181,) Chief Justice Robertson advocates a contrary doctrine, at least so far as a dissolution of the marriage " may be for the public good." But I apprehend that neither of these learned jurists had in view the *rights of property* secured by the marriage contract. As respects property, the contract of marriage must stand upon the same footing as other contracts. By virtue of the marriage relation, the husband becomes entitled to the choses in action of the wife, including legacies and distributive shares. Although this right may not be expressed in the terms of the agreement, it is an incident to the relationship. It is the law of the contract, which enters into and forms a part of it. Therefore a statute which destroys this right impairs the obligation of the contract, and comes within the constitutional inhibition.

It is impossible to separate a contract from the law which gives it efficacy. Parties make their agreements with reference to the law. When a man receives a promissory note for money loaned, or goods sold, he receives that which, upon its face, is

Holmes *v.* Holmes.

but a simple promise to pay the debt. But this is by no means the whole contract. It embraces the law which enables him to enforce payment by judgment and execution. If the legislature should by enactment attempt to abolish the legal process by which payment is compelled, the act would clearly be unconstitutional as to subsisting obligations. It is true that legislation may change and modify the remedy. The forms of law and the proceedings in courts of justice are within its control; provided always that the remedy is not *essentially impaired.* The *form* may be changed but not the *substance.* This doctrine is fully established by the case of *Bronson* v. *Kenzie,* (1 *How. U. S. Rep.* 311.) The court there held that a law of the state of Illinois which declared that the equitable estate of a mortgagor should not be extinguished for twelve months after a sale under a decree in chancery, was, as to existing mortgages, unconstitutional and void. Chief Justice Taney, in delivering the opinion of the court, says : "Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself. In either case it is prohibited by the constitution." Again, he adds : "When this contract was made, no statute had been passed by the state changing the rules of law or equity in relation to a contract of this kind. None such, at least, has been brought to the notice of the court; and it must, therefore, be governed, and the rights of the parties under it measured, by the rules above stated. They were the laws of Illinois at the time; and, therefore, entered into the contract, and formed a part of it, without any express stipulation to that effect in the deed. Thus, for example, there is no covenant in the instrument giving the mortgagor the right to redeem, by paying the money after the day limited in the deed, and before he was foreclosed by the decree of the court of chancery, yet no one doubts his right or his remedy ; for, by the laws of the state then in force, this right and this remedy were a part of the law of the contract, without any express

Holmes *v.* Holmes.

agreement by the parties. So, also, the rights of the mortgagee, as known to the laws, required no express stipulation to define or secure them. They were annexed to the contract at the time it was made, and formed a part of it ; and any subsequent law, impairing the rights thus acquired, impairs the obligations which the contract imposed." The case of *Mc-Cracken* v. *Hayward*, (2 *How. S. C. U. S. Rep.* 608,) is an authority of the same character. Justice Baldwin, in delivering the opinion of the court, declares that the rights and obligations which the law attaches to a contract are as inviolable as if they were secured by the express terms of the agreement itself.

Now if these parties, at the time of their marriage, had made a valid agreement by which the choses in action and future legacies and distributive shares of the plaintiff were expressly transferred to the defendant, no one would pretend that the state could cancel the agreement by legislative enactment. Yet according to the authorities above cited, the law which annexes the same rights to the marital contract, renders them as sacred and inviolable as if they had been among the plain stipulations of the contract.

It is impossible, therefore, in my opinion, to avoid the conclusion that the act of April 7th, 1848, so far as it is intended to affect existing rights of property in married persons is *unconstitutional and void*.

A decree must therefore be entered, without reference to that act, in accordance with the settled principles of equity, directing the fund in question, after deducting the costs of the litigation, to be vested in a trustee for the use and benefit of the wife, with directions to invest the same and pay the proceeds to her during her life ; on her solicitor taking the necessary steps to discharge the defendant from all liability for alimony under the decree of separation.