JOHN S. WILLIAMS, Appellant, *v.* GEORGE WHITTELL, Individually and as Administrator, etc., of ADELINE WILLIAMS, Deceased, and Others, Respondents.

*A written agreement under seal between a husband and the children of a decedent to carry into effect a letter written by her as if a valid will — the husband who has acted under it is estopped to repudiate it — proof of fraud and of a want of consideration therefor.*

A woman whose estate consisted of $17,000 in personalty and who left surviving her a husband and several children died intestate. Her husband found upon her person the following letter addressed to one of her sons, stating: "I desire that this letter shall serve as my last will and testament and I wish my property distributed as follows: (making certain gifts to her children and a grandchild) To my husband, John S. Williams, I give the sum of Five Hundred Dollars."

The husband delivered the letter to the addressee and thereafter he, together with the other parties interested in the estate, entered into an agreement under seal which recited that: "Whereas, the parties of the first and second parts are desirous of carrying out the provisions made in said paper writing, with the same force and effect as if the same had been properly executed as a will of real and personal property. Now, therefore, for and in consideration of one dollar, and other valuable considerations, the parties hereto agree * * * that they will execute upon request such papers as may be necessary to carry into effect the provisions of said paper writing intended as a will whether the same be in form of release or mutual transfer of interest in personal or real estate."

More than a year thereafter the husband brought an action to set aside the agreement on the ground that there was no consideration therefor and that it had been procured by the fraud of the son of the decedent to whom the letter was addressed.

Upon the trial it appeared that the plaintiff was a man fifty-six years of age, in good health, well educated and had served many years as a teacher; that when he received the sealed agreement for execution he read it over, retained it in his possession for half an hour, explained it to his son and thereupon went before a notary and executed it.

*Held,* that a judgment in favor of the defendants should be affirmed;

That the evidence was sufficient to support a finding that the plaintiff was cognizant of the provisions of the agreement at the time he executed it, and that such execution was not induced by any fraud or concealment on the part of the defendants;

That as it appeared that the plaintiff had aided in carrying out the provisions of the sealed agreement and had raised no objection thereto for more than a year after his wife's death, and that during this time the administrator

of the decedent's estate had, in reliance upon the agreement, advanced certain sums to the plaintiff and also to the other beneficiaries, the plaintiff was estopped from raising the question whether the sealed agreement was supported by a sufficient consideration.

*Semble,* that if the plaintiff was not estopped by his conduct from raising the question of consideration, he would not be precluded from raising that question by the recital " of one dollar and other valuable considerations" in the sealed agreement, which was executory.

APPEAL by the plaintiff, John S. Williams, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Westchester on the 5th day of June, 1901, upon the decision of the court, rendered after a trial at the Westchester Special Term, dismissing the complaint upon the merits.

*John M. Gorham,* for the appellant.

*Robert L. Harrison,* for the respondent George Whittell and others.

*Robert W. B. Elliott,* guardian ad litem, for the respondent Florence Whittell.

JENKS, J.:

This is an action to set aside an agreement executed under seal by the plaintiffs and by the several personal defendants on the grounds that there was no consideration therefor, and that it was procured by the fraud of the defendants Williams and Whittell. The plaintiff was the husband of Adeline Williams, deceased, and the defendants are her daughters and a granddaughter, respectively. Mrs. Williams died suddenly on October 29, 1898, intestate. A letter was found upon her person by the plaintiff, dated on that day, subscribed by her, and addressed to her son, the defendant Whittell, wherein she wrote : " I desire that this letter shall serve as my last will and testament and wish my property distributed as follows : To my son, Drage Williams, I give the sum of Four Thousand Dollars. To my son Simon E. Williams, I give the sum of Four Thousand Dollars. To my daughter, Beatrice Williams, I give the sum of Three Thousand Dollars. and also my personal effects and household furniture, (except the piano, which I give to my son, Simon E. Williams.) To my daughter, Flora Wharry, I give the

sum of Three Thousand Dollars. To my granddaughter, Florence Whittell, I give the sum of Five Hundred Dollars. To my husband, John S. Williams, I give the sum of Five Hundred Dollars, and to my son, George Whittell, I give the sum of Four Thousand Dollars, and he is hereby appointed executor of this, my last will, without bonds of any kind, and he is hereby authorized to sell any property I may leave, without an order of Court to do so."

The intestate left no realty; her property was mainly in cash, amounting by the inventory to about $17,000. The plaintiff gave the letter to Whittell on the day after the death of his wife. On November 9, 1898, the defendant Williams presented to the plaintiff the following agreement, which thereafter was duly executed and acknowledged by the plaintiff and by the said defendants: "Memorandum of agreement made and entered into this ninth day of November, eighteen hundred and ninety-eight, by and between John S. Williams, Drage Williams, Simon E. Williams, Beatrice Williams, Flora Wharry and Florence Whittell, parties of the first part, and George Whittell, party of the second part. Whereas, Adeline Williams, late of the City of Mount Vernon, County of Westchester and State of New York, deceased, on the twenth-ninth day of October, 1898, made a certain writing intended to be a disposition of her property by will, but said paper writing was not in the form of a will nor executed according to the statutes of New York in regard to wills; and, Whereas, in and by said instrument aforesaid, the party of the second part was appointed executor; and, Whereas, the parties of the first and second parts are desirous of carrying out the provisions made in said paper writing, with the same force and effect as if the same had been properly executed as a will of real and personal property, now, therefore, for and in consideration of one dollar, and other valuable considerations, the parties hereto agree as follows: *First*, that they will execute such papers as may be necessary to enable George Whittell, party of the second part, to qualify as administrator of the goods, chattels, rights and credits which were of Adeline Williams, deceased. *Second*, the parties hereto further agree that they will execute upon request such papers as may be necessary to carry into effect the provisions of said paper writing intended as a will whether the same be in form of release or mutual transfer of interest in personal or real estate. In witness

whereof, the parties hereto have hereunto set their hands and seals the day and year first above written." On December twenty-second the plaintiff renounced any right of administration, and thereafter letters of administration were granted to Whittell, who qualified and proceeded to administer. In the fall of 1899 the administrator began to prepare his final accounting and an assignment in furtherance of. the agreement was requested from the plaintiff. On January 22, 1900, the plaintiff for the first time objected to the arrangement in question and petitioned for an accounting by the administrator, asking that the Surrogate's Court set aside the agreement on the same grounds that he alleges in this action. The compulsory accounting was merged in a voluntary accounting under the statute, and the Surrogate's Court entertained the proceedings and directed distribution under the agreement, but, holding that it had no jurisdiction to pass upon the invalidity of the agreement, it directed the administrator to deposit a sum which, together with the payments theretofore made to the plaintiff, would equal his share of the estate, under the Statute of Distributions, with the defendant trust company until the validity of the agreement could be determined by a court of competent jurisdiction. Thereupon this action was begun.

The learned Special Term made certain findings of fact and conclusions of law and dismissed the complaint on the merits. The learned Special Term (Mr. Justice WILMOT M. SMITH presiding) found that the plaintiff was fully cognizant of the provisions of the agreement at the time he executed it, and that his execution was not induced by any fraud or concealment on the part of the defendants, or of any of them. We should not disturb this finding unless there is such a preponderance of evidence as would justify a conclusion with reasonable certainty that it was erroneous. (*Lowery* v. *Erskine*, 113 N. Y. 52; *Burton Co.* v. *Cowan*, 80 Hun, 392; affd. on opinion below, 150 N. Y. 583; *Shute* v. *Jones*, 78 Hun, 99; *Slattery* v. *Haskin*, 3 App. Div. 48; *City of New York* v. *Herdje*, 68 App. Div. 370). Not only does the evidence fall far short of this requirement, but I think it was wholly insufficient to establish any fraud. The plaintiff is fifty-six years of age, of good health, highly educated, and has served many years as a teacher in the schools. His testimony shows both his training and his intelligence.

His learned counsel marshals these facts and circumstances against the finding of the learned Special Term. It is said that in the only conversation had between the plaintiff and any of the defendants— that with Whittell on November 1, 1898 — the letter was treated by both parties as a valid will. In narrating this conversation, the plaintiff says that he called Whittell's attention to the " will," but I find not one word of the conversation detailed as to any contention or representation by Whittell that it was a will. And, indeed, plaintiff testifies: " There was no discussion at that time as to whether that was a valid will. *We* spoke of it as nothing else than a will." I fail to find any representation or concealment on the part of Whittell, even if he did employ the term " will " in common with the plaintiff. It is next said that none of the defendants ever informed the plaintiff that the letter was not a legal will, and that when the plaintiff signed the agreement he believed that it was a valid will. I fail to see that there was any legal obligation upon the defendants, or upon either of them, to give definite information to this plaintiff that the letter was not a will. The learned counsel says: " When signing the agreement, plaintiff believed it was a legal will." But his testimony is not clear on this point. He says: " I did not know at that time whether or not it was a legal will. I certainly did believe that it was a legal will." And while he testified that he supposed that if you could prove the handwriting of the testator, and that if it was declared in the writing to be a will, it was a legal will, yet he admitted that he then knew, and had known for one or two years previous, from experience in a litigation, that " it was necessary to have witnesses." What the plaintiff thought or did not think, or knew or did not know, cannot be relevant to establish fraud on the part of the defendants in the absence of all representation or concealment on their part. The doctrine of constructive fraud has no application to this case. In *Cowee* v. *Cornell* (75 N. Y. 91), Hand, J., in the course of his luminous discussion, says that the law does not presume aught from " the fact, for instance, that one party is a grandfather and old, and the other a grandson and young." How much less can there be any presumption where the complaining party is a man in the prime of life, of good health, of high education, of intelligence, and of intellectual pursuits. But the plaintiff says that he " relied upon

the statements that Simon E. Williams made to me in regard to the purpose of the paper that he presented to me to sign, and it was in reliance upon these statements that I signed the paper." This is his testimony with reference thereto : " On the ninth of November, 1898, Simon E. Williams presented to me a certain paper with the request that I sign it. At the time he called upon me then, he had a letter with him, from George Whittell to him. I have been acquainted with the handwriting of George Whittell for three years. The letter you show me is the letter Simon E. Williams handed me on the ninth of November, 1898. When he handed me the letter he said he called at the hotel to see Mr. Whittell, and that he had gone out, and he left him this letter at the office, I believe. * * * At this meeting between Simon E. Williams and myself, on the ninth of November, 1898, he said that Mr. Whittell had prepared this paper, and had selected this special will as the one on account, *first*, of its later date, and *secondly*, because in the first copy that she made the day before she omitted to appoint him executor in making the copy ; that it was not in legal form, * * * and that in order to have it probated all the heirs should agree to sustain it as a will; that if that was done it would expedite the probate of it as a will, and that matters could be settled up quickly. He did not say how quickly. He did not say whether or not Mr. Whittell had legal advice on the subject." On his cross-examination the plaintiff testified : " In the course of that conversation, the fact of the paper not being a valid will was not discussed. The only thing said about it was that it was not in legal form. It would expedite matters if all the heirs would agree to sign an agreement or respect it as a will and then the surrogate could not object to the probate. The propriety of carrying out the provisions contained in the will was not discussed at all. We had very little conversation about it. I took it for a fact that there was no contest, and did not intend to contest it." I cannot, in this evidence, find any fraud in Williams. The plaintiff at that time understood the purport of the letter left by his wife, for he testifies that when he had held a conversation with Whittell prior to this time he was surprised and astonished with the provisions his wife had made, but that he did not say anything to him on the subject; that he did not object or express either satisfaction or dissatisfaction. After he received the agreement he read it over, retained it in his possession

for half an hour, went and explained it to his son Drage, and thereupon they went before a notary and executed it. He who runs may read the instrument. It recites that the dead made a certain writing intended to be a disposition of her property by will, but "said paper writing was not in the form of a will nor executed according to the statutes of New York in regard to wills," and further recites that " whereas the parties of the first and second parts are desirous of carrying out the provisions made in said paper writing, with the same force and effect as if the same had been properly executed as a will of real and personal property." I think that the evidence not only fails to show that there was fraud on the part of any of the defendants, but that it does establish that the plaintiff understood the purpose of the letter and its legal defects; that he was resigned to the disposition of property attempted to be made by his wife and renounced his legal rights; that he understood the purport and purpose of the agreement before he executed it, and that he assented and consented to a legal execution of the wishes of his wife as if they had been expressed in a legal testament, even so far as to accept payment on account of the sum bestowed upon him by the letter.

This appeal may be determined without passing upon the question of consideration. I may, however, say that while the agreement is in the form of an instrument under seal, and the consideration expressed is " one dollar and other valuable considerations," yet, as it was executory, I think that the plaintiff was not, in any event, foreclosed from raising the question. (Code Civ. Proc. § 840; *Baird* v. *Baird*, 81 Hun, 300, 302, per HAIGHT, J.; affd., 145 N. Y. 659.) Proof that the one dollar was not paid did not establish failure of consideration, in view of the recitals of other valuable considerations. (*Kam* v. *Benjamin*, 10 App. Div. 419; affd., 158 N. Y. 725.) In *Elderkin* v. *Rowell* (42 How. Pr. 330) the intestate left a draft of his will, and his widow and five children consented, covenanted and agreed by an assignment indorsed thereon to abide by its provisions. Subsequently one of the children brought an action to set aside the agreement. The Special Term held that the agreement was without consideration and, therefore, void, and the General Term affirmed the judgment on argument. But in *Bunn* v. *Bartlett* (28 N. Y. St. Repr. 239), where there was dissatisfac-

tion with the will and all of the heirs executed an agreement for an equal division and then destroyed the will, and in a subsequent action for partition the defendants resisted the force of the agreement, the General Term, per LANDON, J., said: "The defendants were of full age, knew the effect of their action, and acting upon their sense of justice and a desire to preserve family harmony, generously released their superior rights under their father's will and accepted an equality of rights with their brothers and sisters. Such is the effect of the finding of the referee upon evidence which, we think, not only supports but requires it. The agreement was made upon sufficient consideration. All the heirs received something under the will. Each one released his or her portion to all, and all united in granting to each one an equal portion of the whole. There was, moreover, the consideration of love and affection, and the desire that family harmony should not be destroyed by an unequal distribution of their father's bounty."

But this case should be affirmed upon the doctrine applied by the learned Special Term that the plaintiff was estopped from raising the question of consideration. Mrs. Williams died in 1898. The plaintiff took the testamentary letter from her dead body and gave it to the son whom she had named as executor. While he was surprised and astonished with the provisions of the letter, he made no objection thereto. Several weeks thereafter he executed the sealed instrument which made the letter a will so far as his assent could make it. In December, 1898, he signed renunciation of his right to administer and obtained his son Drage's renunciation. Whittell was allowed to take the letters, to file a bond for $36,000 and to administer upon the estate. On November 10, 1898, the plaintiff received a letter from Whittell acknowledging the papers signed by him, wherein Whittell wrote that such papers were necessary to sustain the written will because it was not in legal form, and stating that Williams had requested Whittell to send the plaintiff thirty dollars a month pending the distribution. This amount was paid and accepted up to January 9, 1900. In December, 1899, the administrator's attorneys wrote for an assignment in furtherance of the agreement, stating that they wished to settle the estate. The plaintiff received the assignment, calculated upon it the result of the fractional division in accord

with the agreement, found a variation, and wrote to have it corrected or to specify the different amounts, and made no further cavil or objection. The personal property was distributed in accord with the letter of the dead. Although this was done before the agreement was signed, it was after the parties had agreed to stand by the letter. The administrator had advanced to the other beneficiaries substantial sums of money, and to Mrs. Robinson a much larger sum, in reliance upon the agreement, than she would have been entitled to under distribution, and this is probably true as to the other beneficiaries. Mrs. Robinson has expended the money advanced to her. Not until January 22, 1900, did the plaintiff make any objection or give any sign of dissatisfaction or disposition to withdraw from the family arrangement. Neither false representation nor concealment of material facts, nor the intent to mislead, is necessary to an equitable estoppel. (*Trustees, etc.,* v. *Smith,* 118 N. Y. 634.) In the same case, the court, per BROWN, J., say: "The authorities in this state are all harmonious on the subject of estoppel *in pais.* When a party, either by his declarations or conduct, has induced a' third person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission if the consequence would be to work an injury to such third person or to some one claiming under him," citing many authorities. There was not mere silence or omission to speak or to protest for more than a year, but a series of solemn, overt acts, all in furtherance of the agreement which the plaintiff would not repudiate. I think that the plaintiff was estopped. (*Crawford* v. *Ormsbee,* 6 App. Div. 50, and authorities cited; *Haviland* v. *Willets,* 141 N. Y. 35, 51, 52.)

The judgment should be affirmed, with costs.

All concurred.

Judgment affirmed, with costs.