In the Matter of the Application of IRVING TRUST COMPANY and THOMAS F. McGLONE, JR., as Executors under the Last Will and Testament and Codicil Thereto of JOHN J. McGLONE, Deceased, for a Determination of the Right of HELENA DAY McGLONE to Elect under Section 18 of the Decedent Estate Law to Take against the Provisions of Said Last Will and Testament and Codicil Thereto of JOHN J. McGLONE, Deceased.*

IRVING TRUST COMPANY and THOMAS F. McGLONE, JR., as Executors, etc., of JOHN J. McGLONE, Deceased, THOMAS F. McGLONE, ROSE McGLONE MEREDITH, IGNATIUS V. McGLONE, and EDWARD McGLONE. and ROBERT McGLONE, Infants, by RALPH L. KASKELL, JR., Special Guardian, Appellants; CHASE L. DAY, as Executor, etc., of HELENA DAY McGLONE, Deceased, Respondent.

Second Department, January 29, 1940.

---

\* Revg. 171 Misc. 612.

*Philip Zierler,* for the appellants Irving Trust Company and Thomas F. McGlone, Jr., as executors, etc., Thomas F. McGlone and Rose McGlone Meredith.

*Ralph L. Kaskell, Jr.,* special guardian, for the appellants Edward McGlone and Robert McGlone.

*Andrew F. Van Thun, Jr.* [*George H. Burtis* with him on the brief], for the respondent.

CARSWELL, J.   The executors of the testator petitioned that it be decreed that his widow was not entitled to elect, under section 18 of the Decedent Estate Law, to take against his will and codicil. Upon the executors' proof, the widow adducing none, the surrogate decreed that the widow had the right so to elect and had effectively exercised it.   The executors and certain next of kin of the testator appeal.   The widow died after the decree was entered and has been succeeded by her executor.

The facts are not in dispute.   They are contained in the pleadings, certain stipulations and two documents.

On February 2, 1922, the testator, John J. McGlone, and Mrs. Helena Day Snyder, American citizens, were in London, England. On that day Mrs. Snyder signed a document. She recited in it that she was of sound mind and, as the occasion was the eve of her marriage to McGlone on February 4, 1922, she wished to record of her own free will that she had ample property and a fortune of her own and as a compliment to her prospective husband and for other good reasons she voluntarily and irrevocably renounced all right, title and interest that she might have, legally or otherwise, to share in any estate of McGlone of which he might die seized. This instrument, in script, on a letterhead of the Savoy Hotel, was in the handwriting of an unidentified person. Mrs. Snyder's signature was conceded to be valid.

On February 4, 1922, McGlone and Mrs. Snyder were married. This was his first and her third marital venture. The authenticated record of the marriage discloses that McGlone was forty-seven years of age and an officer of a steamship line and that Helena Day Snyder was forty-five years of age and a widow. The proof reveals this reference to forty-five years was incorrect; that her real age was sixty-two. She had no children by her prior marriages nor by this one.

On August 21, 1930, as a resident of Brooklyn, McGlone made a will in which he recited the execution by his wife of the February 2, 1922, document, waiving all claim to any interest in his estate. He, nevertheless, provided that $2,000 should be used to purchase a token for her. On July 6, 1934, he executed a codicil which did not disturb the foregoing provision in the will.

On February 22, 1937, McGlone died. His will was admitted to probate on April 8, 1937. The widow executed and filed on September 23, 1937, an instrument purporting to be a notice of election, pursuant to section 18 of the Decedent Estate Law, to take against the will and codicil.

The first question is whether on the foregoing proof a presumption of constructive fraud arose from the mere relation of the parties at the time the February 2, 1922, instrument was signed; and whether, because of such a presumption, the executors were obligated to adduce affirmative proof that the parties dealt with each other on terms of equality and fairness and that the act of Mrs. Snyder was voluntary and well understood.

The respondent invokes such a presumption. It concerns elements which are a species of fraud. The general rule is that fraud vitiates all contracts, but that it is not presumed. An exception arises when the relations of the parties to a contract evoke a presumption of constructive fraud, which presumption requires

one invoking the contract to prove affirmatively that it was not the product of undue influence, inequality, overreaching, deception or mistake. This presumption is ordinarily applied to the relationship of guardian and ward, trustee and *cestui que trust*, attorney and client, and physician and patient. It is also applied to other close relationships when it is affirmatively established by proof of circumstances that the parties are not dealing on an equal basis. (*Cowee* v. *Cornell*, 75 N. Y. 91, 99.) The presumption does not arise from the mere relation of parent and child. (*Cowee* v. *Cornell*, *supra*, p. 101; *Carpenter* v. *Soule*, 88 N. Y. 251, 256; *Jones* v. *Jones*, 137 id. 610, 613; *Williams* v. *Whittell*, 69 App. Div. 340, 344.) Under the rule which stems from the foregoing cases, no presumption arises merely from the equally close relation of husband and wife. (*La Tourette* v. *La Tourette*, 54 App. Div. 137, 138; *Green* v. *Benham*, 57 id. 9, 14; *Donlon* v. *Donlon*, 154 id. 212, 216, 217; *Matter of Rogers*, 250 id. 26, 28; leave to appeal denied, 274 N. Y. 642; 30 C. J. 668, § 244.) These cases enforce the rule that in such relationships, whether a presumption of inequality or constructive fraud arises " is a question of fact dependent upon the circumstances in each case. There is no presumption of inequality either way from these relations merely." (*Cowee* v. *Cornell*, *supra*, p. 101.) " The law does not presume aught " from this type of mere relationship. (*Williams* v. *Whittell*, *supra*, p. 344.) Judicial utterances, invoked to support a contrary view, are to be found only in cases, otherwise authoritative, where there was affirmative proof of circumstances of inequality which raised a presumption of constructive fraud and shifted to the proponent of the instrument the burden of going forward with proof that it was executed with understanding, without overreaching and free from any vitiating element. It is when a vitiating element, even though slight, appears that such an agreement is subjected to searching scrutiny. The latter type of cases involving the relationship of parent and child (*Green* v. *Roworth*, 113 N. Y. 462; *Barnard* v. *Gantz*, 140 id. 249), and the relationship of husband and wife (*Pierce* v. *Pierce*, 71 N. Y. 154; *Graham* v. *Graham*, 143 id. 573; *Lamb* v. *Lamb*, 18 App. Div. 250) is not applicable here. When properly read and analyzed they manifest no essential conflict with the cases which control the instant case.

The burden of proving that the instrument of February 2, 1922, was validly executed rested upon the executors. (30 C. J. 668, § 244; *Matter of Dunn*, [Iowa] 224 N. W. 38.) The unchallenged proof that this instrument was genuine was sufficient to establish *prima facie* that it was binding upon the widow. (*Pimpinello* v. *Swift & Co.*, 253 N. Y. 159, 162; *Matter of Stone*, 272 id. 121, 124.)

The executors were not obligated to come forward with further proof in the absence of proof from the widow indicating that she dealt with her prospective husband under circumstances of inequality, or with lack of understanding of the effect of her act. If such proof, even though slight, had been forthcoming, the burden or duty of going forward to rehabilitate the *prima facie* binding force of the instrument would then have shifted to the executors. The widow, in seeking to repudiate her solemn writing, was not aided by or armed with a presumption of inequality (*La Tourette* v. *La Tourette, supra*) in the absence of some proof casting suspicion upon or tending to vitiate the instrument.

It has long been the practice of courts to enforce antenuptial agreements, whether they relate to existing or after-acquired property, as such agreements are favored. (*Johnston* v. *Spicer,* 107 N. Y. 185, 194; *Matter of Young* v. *Hicks,* 92 id. 235; *Green* v. *Benham, supra.*) The relationship between husband and wife is, of course, sufficiently close and confidential to require but little affirmative proof in order to cast the burden upon one invoking an instrument executed by a spouse to come forward with affirmative proof that it was executed under circumstances of equality and fairness. This proof may take the form of lack of knowledge on the part of the one resisting the instrument, differences in knowledge of the respective parties, differences in mental or bodily strength, or unfairness and the like. The instrument itself may reveal want of fairness and lack of equality. But none of these elements is present here. The widow might have created the presumption she invokes and cast the burden upon the executors of establishing the fairness of the instrument and its inequality, if she had made proof — no doubt readily available to her if it were the fact — that the recitals in the instrument were untrue, and by reason of such a circumstance the inference might have been drawn that she was not dealing on a plane of equality with McGlone. She proffered no such proof, so that the recital of admissions made by her must be deemed to be true.

This view makes the executors' proof take on added strength because the instrument furnishes evidence or affirmative proof, by these recitals, in the absence of repudiation or challenge of them by the widow, that she dealt with McGlone under circumstances that were free from inequality and unfairness. The document contains internal evidence that she was possessed of an independent fortune and that because thereof she understandingly renounced any interest in her prospective husband's estate. Another circumstance in the record affirmatively points the same way. The marriage record discloses that the marriage took place two days

after the instrument was signed. She gave her age as forty-five, when the fact is that she was sixty-two years of age when she married McGlone, who was then forty-seven years of age. This fact, and the further fact that it was her third marriage, give rise to implications that she was not lacking in experience or suffering from inequality. These facts also carry the further implication that the instrument was signed to induce the marriage.

These views respecting burden of proof were stated more briefly on a prior appeal in this case (256 App. Div. 1074) and result from a re-examination of the subject.

The next question concerns whether the form of the instrument of February 2, 1922, complies with subdivision 9 of section 18 of the Decedent Estate Law. It was not executed by both spouses. It was not necessary that it should be so executed. A unilateral agreement is sufficient when it is acted upon by the other spouse. (*Matter of Moore*, 165 Misc. 683.) This view is in accord with the law as it existed before the enactment of that section. Under pre-existing statutes a unilateral agreement affecting the marriage relation and rights thereunder, when acted upon, was valid. (Dom. Rel. Law, § 53; Pers. Prop. Law, § 31, subd. 3; *Wright* v. *Wright*, 54 N. Y. 437; 30 C. J. 628, § 185.)

It is asserted, however, that this instrument was merely subscribed and not acknowledged, as required by subdivision 9 of section 18 of the Decedent Estate Law. That subdivision reads: " The husband or wife during the lifetime of the other may waive the right of election to take against a particular last will and testament by an instrument *subscribed and duly acknowledged,* or may waive such right of election to take against any last will and testament of the other whatsoever in an agreement so executed, made before or after marriage. An agreement *so executed* made before the taking effect of this section wherein a spouse has waived or released all rights in the estate of the other spouse shall be deemed to release the right of election granted in this section."

The last sentence is the one here applicable. The words " so executed " contained therein incorporate by reference the requirement in the preceding sentence that the subscription shall be " duly acknowledged." The instrument, therefore, of February 2, 1922, does not comply with this requirement.

This necessitates determining whether the above last sentence is constitutional. If it is invalid the lack of an acknowledgment is not fatal to the instrument. When that instrument was executed on February 2, 1922, there vested under it in the testator certain contract rights. The instrument was valid under the pre-existing statutes (Dom. Rel. Law, § 53; Pers. Prop. Law, § 31, subd. 3),

which did not require an acknowledgment; and an antenuptial agreement made in a foreign country is enforcible in this State. (*Lemyé* v. *Sirker*, 226 App. Div. 159, 161; *Ross* v. *Ross*, 233 id. 626.)

This vesting occurred before the enactment of subdivision 9 of section 18 of the Decedent Estate Law (added by Laws of 1929, chap. 229, and amd. by Laws of 1930, chap. 174). The subsequent enactment, therefore, violated the testator's constitutional rights. (U. S. Const. art. 1, § 10; State Const. art. 1, § 6.) By the former a State is forbidden to pass any law impairing the obligation of contracts, and the latter provides that a person shall not be deprived of property without due process of law. As subdivision 9 invades the contract rights vesting in McGlone prior to its enactment, it is invalid. (*Walker* v. *Whitehead*, 83 U. S. [16 Wall.] 314; *Edwards* v. *Kearzey*, 96 id. 595; *Tennessee* v. *Sneed*, Id. 69; *Louisiana* v. *New Orleans*, 102 id. 203; *McGahey* v. *Virginia*, 135 id. 662; *Coolidge* v. *Long*, 282 id. 582; *Holmes* v. *Holmes*, 4 Barb. 295, 303; *Ralph* v. *Cronk*, 266 N. Y. 428; *Matter of Goldberg*, 275 id. 186, 189.)

The entire sentence, however, need not be invalidated. It will be sufficient to sever, void or delete the words " so executed." It is universally recognized that a statute may be constitutional in part and unconstitutional in part, and that the invalid part may be severed from the remainder, if after the severance the remaining portions are sufficient to effect the legislative purpose deducible from the entire act, construed in the light of contemporary events. " The question is in every case whether the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether." (*People ex rel. Alpha P. C. Co.* v. *Knapp*, 230 N. Y. 48, 54, 60, per CARDOZO, J.; *People* v. *Mancuso*, 255 id. 463, 472, 473.) The deletion of the words " so executed " does not pervert the legislative purpose. That purpose was to save agreements previously executed. The language, however, went beyond this purpose and prescribed a form of execution more exacting than was required by pre-existing statutes and, as a consequence, violated previously vested contract rights under agreements whose form complied with the earlier statutes.

This view has the further effect of recognizing that the sentence with the deletion of the words " so executed " becomes declaratory, in substance, of the pre-existing statute law (Dom. Rel. Law, § 53; Pers. Prop. Law, § 31, subd. 3) through which contract rights vested in the testator under the instrument of February 2, 1922, and which were acted upon by McGlone at the time of the marriage on February 4, 1922. So far as the form of the instrument, there-

fore, it is completely effective as being in compliance with subdivision 9 of section 18 of the Decedent Estate Law, so far as the same is valid.

This leaves one further question — that of consideration. The February 2, 1922, instrument had a valid consideration. The marriage constituted that consideration. It has long been recognized as " among the highest considerations known to the law." (*Kramer* v. *Kramer*, 90 App. Div. 176, 180; *DeCicco* v. *Schweizer*, 221 N. Y. 431, 438, 440; *Matter of Miller*, 77 App. Div. 473; *Wright* v. *Wright*, 54 N. Y. 437; *American Surety Co.* v. *Conner*, 251 id. 1, 11.)

Accordingly, the instrument of February 2, 1922, under the proof herein constituted a complete bar to the right of the widow to elect to take against the will and codicil of the testator.

The decree of the Surrogate's Court of Kings county, in so far as appealed from, should be reversed on the law and the facts, with costs to appellants filing briefs, payable out of the estate of John J. McGlone, and the matter remitted to the Surrogate's Court for the entry of a decree as prayed for in the petition herein.

LAZANSKY, P. J., JOHNSTON, ADEL and CLOSE, JJ., concur.

Decree of the Surrogate's Court of Kings county, in so far as appealed from, reversed on the law and the facts, with costs to appellants filing briefs, payable out of the estate of John J. McGlone, and the matter remitted to the Surrogate's Court for the entry of a decree as prayed for in the petition herein.