In the Matter of the Estate of JACOB L. MARKEL, Deceased.*†

Surrogate's Court, New York County, August 1, 1940.

*Broadwin & Mannheimer*, for the petitioner.

*Isidor Neuwirth*, for the surviving spouse.

FOLEY, S.   Miriam Markel, the widow of the testator, seeks in this proceeding an adjudication as to the validity and effect of the written election made by her to take her intestate share of the estate, pursuant to the provisions of section 18 of the Decedent Estate Law.

The executors contend that the widow is not entitled to elect because of an ante-nuptial agreement made between her and the testator, dated November 29, 1935, wherein she expressly waived, pursuant to the provisions of subdivision 9 of the section, any right to take against the testator's last will.   In her reply and in her bill of particulars and upon the trial, the widow and her counsel contended, in substance, that the ante-nuptial agreement was void because it was induced by the representations of the testator that it would mean nothing between husband and wife; that it was made simply to satisfy his sons; that it had nothing to do with her marital rights; that he would provide for her to the same extent to which she would be entitled under her statutory rights and that the agreement was procured by the inequality between the parties, by fraud, deception and overreaching.

---

* See, also, 175 Misc. 573.— [REP.     † Affd., 261 App. Div. 950.

The agreement of November 29, 1935, required Mr. Markel to create a trust fund in his will with a capital of $10,000, with income payable to his wife. In addition to the payment of the income on that amount he was required to provide that a sum of $2,400 per year be paid to her out of the principal of the trust. The prospective wife agreed that the required testamentary provisions shall " be in place and stead of all the rights which she, as widow, might otherwise have but for this agreement." By a further provision both the prospective husband and wife " waives the right of election conferred by section 18 of the Decedent Estate Law * * * to take against any last will and testament of the other, and also waives all other rights which each as the surviving spouse of the other, might otherwise have."

The parties were married on December 18, 1935, within less than a month after the execution of the ante-nuptial agreement. In his last will executed on December 28, 1938, Mr. Markel carried into effect the testamentary dispositions required under the agreement. He gave to her in addition certain securities of the approximate value of between $4,000 and $5,000. He left a gross estate of approximately $80,000.

The surrogate finds upon the evidence that no fraud, deception, overreaching or imposition was practiced upon the wife and that the signing of the agreement was her free and voluntary act. It constitutes, in all respects, a valid and enforcible waiver and relinquishment of her statutory right of election under section 18 of the Decedent Estate Law. There was no misrepresentation as to the net worth of the testator's property prior to the signing of the agreement I reject as unworthy of belief the testimony of the witnesses called by the petitioner that the testator stated to them or to his wife that the agreement meant nothing to them or had nothing to do with her marital rights or was only made as a convenience to satisfy his sons.

It was urged by counsel for the petitioner that, while her signature was authentic, she had no recollection of the occasion, time or place when she affixed her signature nor any remembrance of her acknowledgment to the notary. The latter was called as a witness. He was connected with a safe deposit company where the petitioner had a vault. He had no connection whatsoever with the testator, or with his sons or their attorneys. His testimony is convincing that he took the acknowledgment of the petitioner to the instrument in her presence.

It was also asserted that there was inequality between the prospective wife and husband and that he was a successful business man, the president of a bank in this city, and that she was lacking

in business experience and unable to understand her legal rights. The evidence clearly negatives these contentions. Both parties had been previously married. The petitioner had two grown-up daughters. The testator had three grown-up sons. At the time of the making of the agreement the prospective wife was about fifty-seven years old and the testator was about seventy-five years of age. Tested by their respective ages, the advantage was, therefore, with the younger person. The widow in her appearance upon the witness stand, although without business experience, gave the impression of an educated, cultured and clever woman. These, and other circumstances in the record, " give rise to implications that she was not lacking in experience or suffering from inequality." (*Matter of McGlone*, 258 App. Div. 596.)

About a month before the agreement was executed in 1935 there had been at least one conference between the testator and his attorney and the prospective wife and her attorney concerning the making of a substantially similar ante-nuptial agreement. Her attorney had known her for many years. He was personally chosen by her. He had long professional experience and testified that he was familiar with the statute applying to the right of election. Despite his testimony to the contrary, I am convinced that he apprised his client of her rights. It is to be presumed that he discharged his duty to her by disclosing to her such rights. (*Matter of Rogers*, 250 App. Div. 26.) The completion of the execution of the first agreement appears to have fallen through because her attorney regarded the amount of the trust as inadequate. In any event the knowledge which she possessed in connection with the first agreement continued with her when the new agreement of November 29, 1935, was consummated. (*Matter of Rogers*, *supra*.)

Stress should also be laid upon the fact that the prospective husband in the same instrument waived any right to elect to take against the will of his prospective wife. Mutual rights were thus surrendered by both parties.

I am convinced that the petitioner was fully aware of the scope and effect of the instrument which she signed. When a person signs a formal agreement, such as is involved here, some sanctity must be attributed to her act of signing. It may not be regarded merely as a lesson in penmanship on her part. In the absence of evidence showing fraud or imposition, she is bound with knowledge of the character and contents of the formal instrument. (*Matter of Stone*, 272 N. Y. 121; *Matter of Schoenewerg*, 277 id. 424; *Matter of James*, 173 Misc. 1042.)

In *Matter of Moore* (165 Misc. 683; affd., 254 App. Div. 856; affd., 280 N. Y. 733) I had occasion to review the history and legislative intent of that part of section 18 which deals with agreements of waiver by a spouse of a right to elect. In that case the husband sought to avoid the effect of his written waiver. Its validity was sustained. In three other cases the appellate courts have considered the validity of written agreements of waiver of the statutory rights by a wife: *Matter of Rogers (supra)*; *Matter of Denison* (255 App. Div. 294; affd., 280 N. Y. 589) and *Matter of McGlone* (258 App. Div. 596). In each of these cases there were charges of imposition or fraud or misunderstanding of the effect of the instrument. In each case the agreement of waiver was sustained.

Submit order on notice accordingly, containing an appropriate determination that the petitioner waived her right of election to take against the last will and testament of the testator by a valid agreement.