---

In re SCOTT et al.

In re MARGETTS' ESTATE.

(Supreme Court, Appellate Division, Third Department.   January 5, 1916.)

1. DOWER ⬦⟹41—RELEASE—VALIDITY—ANTENUPTIAL AGREEMENT.
    Where a clergyman, 76 years old, about to remarry, in order to protect his children, to whom he had willed realty, made an antenuptial agreement with the wife the day before their marriage whereby she freely and with full knowledge released her right of dower in the willed realty, which at the time of the testator's death was worth some $4,000, but retained her rights in his personalty, which at such time was worth more than $8,000, also retaining her rights in any realty acquired after the date of the will to the children, such agreement was valid, since antenuptial contracts, whereby a future wife releases her dower and other rights in her husband's estate upon his death, will be enforced, when fairly made and executed, without fraud or imposition.

    [Ed. Note.—For other cases, see Dower, Cent. Dig. §§ 114–122; Dec. Dig. ⬦⟹41.]

2. EXECUTORS AND ADMINISTRATORS ⬦⟹507—SETTLEMENT OF ACCOUNTS—PROCEEDINGS—RECEPTION OF EVIDENCE.
    In proceedings before a surrogate to settle an executor's account, in which the validity of an antenuptial agreement whereby testator's wife released her dower rights in realty willed his children by a former marriage was in question, though the evidence had been closed and briefs submitted, and the surrogate had stated orally to the attorney that he would find the antenuptial agreement invalid for want of consideration, his action in refusing to receive evidence, before making his deci-

⬦⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sion, that there was a pecuniary consideration for such agreement by way of a mortgage, was improper.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2004, 2005, 2178–2191; Dec. Dig. ☞507.]

3. HUSBAND AND WIFE ☞49½—GIFT—SUFFICIENCY OF EVIDENCE.

In proceedings before a surrogate to settle an executor's account, evidence *held* sufficient to justify a finding that testator had made a valid gift of a horse to his widow.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 249–255; Dec. Dig. ☞49½.]

Appeal from Surrogate's Court, Broome County.

In the matter of the settlement of the accounts of Ellsworth E. Scott and another, executors of Henry G. Margetts. From a surrogate's decree settling the accounts of the executors, and to review an order denying an application to submit further evidence, the executors and the residuary legatee appeal. Decree and order reversed, and matter remitted.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Rollin W. Meeker, of Binghamton, for appellants.

Hinman, Howard & Kattell, of Binghamton, for respondent Jean Margetts.

JOHN M. KELLOGG, P. J. Two questions of importance are raised upon this appeal: (1) The validity of the antenuptial agreement; (2) the refusal of the surrogate to allow the appellants to submit further evidence.

[1] The decedent was a clergyman residing at Nineveh, N. Y., and was about 76 years of age. He married Jeanie Graves, 49 years of age, at her home at Banbury, Oxon, England, August 13, 1912. The antenuptial agreement was made at Banbury the day before the marriage. It recited that "whereas, and in view of" her being married to him on the 13th inst., and the fact that a widow, under the laws of the United States, can claim a third interest in her husband's real estate, and that he had made a will dated May —, 1912, giving his real estate to his four children, and provided that she thereby relinquishes any and all claims she may have as his wife to her thirds in the real estate mentioned ("but no part of this agreement is intended to apply to personal property"), and upon his decease his executors may proceed to wind up and distribute his real estate willed to the children in the same manner as though he left no widow, etc. It was further explicitly understood that the relinquishing of the dower only related to the real estate acquired previous to the date of the will, and that any estate, whether personal or real, acquired after the marriage, he has the right to dispose of by will without reference to his four children.

The surrogate has held this agreement invalid, and that she received no consideration for its execution, or for the attempted or purported relinquishment of her dower rights in his real estate. The agreement was executed before a witness, J. Graves. There is nothing

to indicate that it was not fully understood, or that any deception or fraud was exercised in its execution. It is evident that the agreement was made in contemplation of marriage, and that the marriage about to be performed was its principal consideration.

"Antenuptial contracts, whereby the future wife releases her claim to her right of dower, and all other rights to the estate of her husband upon his decease, are fully recognized in law. When fairly made and executed, without fraud or imposition, they will be enforced by the courts. The surrender and release of rights to be acquired by the intended wife by the marriage relation must, however, be regarded with the most rigid scrutiny; and courts will not enforce contracts of this nature against the wife where the circumstances establish that she · has been overreached· and deceived, or been induced by false representations to enter into a contract which does not express or carry out the real intention of the parties. The relationship of parties who are about to enter into the married state .is one of mutual confidence, and far different from that of those who are dealing with each other at arm's length. This is especially the case on the part of the woman; and it is the duty of each to be frank and unreserved when about to enter into an antenuptial contract, by a full disclosure of all facts and circumstances which may in any way affect the agreement." Pierce v. Pierce, 71 N. Y. 154, 157, 27 Am. Rep. 22.

The General Term in this department has recognized the rule that the validity of such agreements rests upon the facts of each particular case. Davis v. Wood, 10 N. Y. Supp. 460.[1]

This agreement was not unreasonable or unjust to the wife. The husband died October 10, 1912, and we may assume that the financial condition of this country clergyman had not materially changed between the making of the agreement and the date of his death. He left $8,987.35 in personal property and $4,750.14 of real estate. By the will referred to in the agreement he had given his real estate substantially to his four children. There is, however, a disputed question of, fact as to whether a legacy of $200 is payable from the real or personal property. He felt it reasonable, at the time of contracting a new marriage at his advanced age, to have it understood that some provision was to continue for his children. The greater part of his estate was unaffected by the agreement. It was limited entirely to the real estate given by will to his children, and did not affect other real estate. It is evident that she knew the terms of the will and had a "certain familiarity with his property. He left no other will, and she is entitled to share in the personal property as unbequeathed assets. She seems to have been well provided for. There is nothing in the terms of the agreement or the circumstances of its execution which throw a doubt upon its justness, and it should stand as the deliberate contract of the parties. After she had married the father, she ought not to be permitted to claim dower in the real estate which they both intended should go to his children, free of, any claim of dower upon her part. The fact that the agreement was made the day before the marriage, and in view of it, indicates clearly that the marriage was a part of its consideration. The determination of the

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 56 Hun, 648.

surrogate that the agreement is not binding upon her is not satisfactory and should be reversed.

[2] If the surrogate felt there was a reasonable doubt whether a consideration had been shown, it is difficult to understand the refusal to allow the appellants to show that coincident with its execution he executed and delivered to her a mortgage of the value of $900, which would be about the value of her dower interest in his real estate. This evidence, if admitted, would have demonstrated beyond question the absolute fairness of the agreement so far as she is concerned. We have held that the inference follows the agreement that it was made in consideration of the marriage; but we do not mean thereby to foreclose the appellants from the right to put in positive proof of the monetary consideration, if they are so advised. They may feel that their rights rest more securely with such added evidence. We infer, from the preliminary objections filed to the petition asking to submit further evidence, and the affidavit accompanying it, that the evidence had been closed and briefs submitted, leaving the question of costs and of a supplementary account for further consideration, and that the surrogate had stated orally to the attorneys that he would find the antenuptial agreement invalid. But no decision had been made or signed. Although a case has been argued, and the court has intimated its probable decision, when it is asked to grant a further hearing to permit evidence material and essential to the issue tried, it would seem to be its duty under the circumstances of the case, in the interest of justice, to hear such additional evidence.

The surrogate felt that the agreement was without consideration. When the sworn petition of the administrator offered to show an express consideration, the evidence should have been received. The preliminary objection was sustained without prejudice to a further application by said petitioners, as they may be advised. Having in mind that the agreement was without consideration, and refusing the petitioners the right to show the consideration, because the case had been submitted and an oral decision stated, it is difficult to see what was to be gained by a further application. If the preliminary objections were fatal to the application to put in the new evidence, as the surrogate considered, a further application could do no good. The order entered, denying the petitioners the right to submit such testimony, was erroneous. We conclude that the appellants should have an opportunity, if desired, to show that coincident with the execution of the antenuptial agreement certain property was transferred as a part of the transaction, and also the value of the personal property remaining for distribution.

[3] It is urged that the surrogate committed an error in determining that the horse "Good Boy" was the property of the widow. We think not. The evidence shows that the husband admitted from time to time that he had given the horse to her and that it was her horse. This does not indicate a mere promise to give. The surrogate was justified in finding that it had been given in such a way as to become a valid gift. We find no valid objection to the decree and determi-

nation of the surrogate, except in reference to the antenuptial agreement and the dower interest of the widow.

The decree and order are therefore reversed upon the law and the facts, and the matter remitted to the surrogate for further consideration, with costs to the appellants to abide the event. All concur; LYON and HOWARD, JJ., in result, on the ground that proof of the $900 mortgage should have been received.