In the Matter of Proving the Last Will and Testament of HENRY B. JONES, Deceased.

WILLIAM H. CORBUSIER, Appellant; JOHNSON BEERS, Respondent.

Third Department, December 28, 1921.

Wills — probate — lack of testamentary capacity — undue influence — circumstances requiring evidence that will of feeble old man ninety-two years of age was free and intelligent expression of his wishes where bulk of property intended to go elsewhere is given to residuary legatee and executor who drew will — decree of probate reversed and contest allowed where no such evidence appears.

In proceedings for the probate of a will it appeared that the testator was a man about ninety-two years old, weak and feeble, with but little understanding and believed by doctors to be incompetent; that the will in question was in the handwriting of the chief beneficiary and executor who obtained substantially the entire estate under its fifth item to "sell and dispose of in such manner as in his judgment would be satisfactory

to me;" that he was also given $2,000 as a remembrance for past services; that there was nothing to indicate any intimate relations between the testator and his executor until just prior to the execution of a will previous to the one in question, which the executor drew and in which he was given $1,000; that no real services of any particular value were shown to have been rendered by the executor to substantiate his legacy and it was evident that the phraseology of the will in this respect was the language of the executor and not of the testator. It also appeared that in three of the five wills the testator executed, provision was made for his property to revert to his wife's family, but in the two wills drawn by this executor no such provision was made.

*Held*, that the circumstances require evidence to show that the will in question was the free, untrammeled and intelligent expression of the wishes and intentions of the testator, and since no such evidence appears the decree admitting the will to probate should be reversed and a contest allowed.

VAN KIRK and COCHRANE, JJ., dissent, with opinion.

APPEAL by William H. Corbusier from a decree of the Surrogate's Court of the county of Chemung, entered in said Surrogate's Court on the 20th day of April, 1921, admitting to probate the last will and testament of Henry B. Jones, deceased, and also from an order entered in said Surrogate's Court on the 26th day of April, 1921, directing that letters testamentary issue to Johnson Beers, the executor named in the will.

*Stanchfield, Collin, Lovell & Sayles* [*Pierre W. Evans* of counsel], for the appellant.

*Thomas M. Losie*, for the respondent.

JOHN M. KELLOGG, P. J.:

The testator was about ninety-two years of age when he made the will. He may have had intelligence enough to make a will if he had been left entirely alone. The doctors believe he was incompetent and much evidence was produced tending to show his incompetency. The evidence presented a question of fact upon that subject, and perhaps a finding either way would not be unreasonable. The fact, however, remains — he was a weak, feeble old man, with but very little understanding and comprehension. He was quite deaf, and could only read with a high power magnifying glass. Any one who had his confidence could easily deceive him, and it is evident that he was not able to make a will without the

assistance of some friend who could advise with and keep him straight. He had the will habit; what property he had he had acquired from his wife, and it was expected, and he had agreed, that it should go to her relatives. The will in question is in the handwriting of Johnson Beers, the chief beneficiary and executor, and if the testator knew its contents, he and Beers were the only persons who did. The witnesses were not informed upon the subject. Beers brought the testator into the bank, produced the will, and the formalities were complied with by the testator saying " Yes," or nodding his head to the questions asked, and the witnesses signed. He made no affirmative statement himself. The witnesses had no particular knowledge of him or his affairs. The will is dated April 17, 1919. He had executed a will, also in the handwriting of Beers, about two months before, or February 10, 1919. In the February will we find this clause: " I give and bequeath to my executor and friend, Johnson Beers or assigns, One thousand dollars, who will take care and look after my business and interest during my lifetime." Apparently this will was the first one in which the name of Beers appears. A friend had drawn wills for him. May 10, 1913, May 1, 1915, and November 6, 1916, and at each time the testator had been particular to tell him to remember the provisions in his wife's will and to provide " that the property go back to the Corbusiers," her family. He showed the February will to this friend, in the presence of Beers, and asked him to read it; upon reading it the friend said, " if that is as you want it, it is all right," to which he replied, " Well, Johnson [meaning Beers] has agreed to look after everything for one thousand dollars," and the witness replied, " if the will is as you want it, it seems to be executed properly." In the alleged last will of April, by the 3d item, he gives to Beers $2,000 in cash " in remembrance of his services in looking after my business interest," and the 5th item reads as follows:

" *Fifth.* All the rest, residue and remainder of my property I give, devise and bequeath to my executor with the request that he sell and dispose of such property in such manner as in his judgment would be satisfactory to me."

Beers was principally interested in the change in the will.

The gift of the $1,000 to Beers in the February will imposed upon him the duty of taking care of and looking after the business and interests of the testator during his lifetime. In the present will the duty of future services was done away with and the gift of $2,000 appears as a remembrance for past services. By the agreement with Beers he was to look after everything, even with reference to the estate. No real substantial services of any particular value are shown. This change in the cash legacy, and the peculiar form of the 5th item, throw upon the will a serious doubt. The 5th item does not name Beers; it gives the remainder of the property to the executor to " sell and dispose of  *  *  * in such manner as in his judgment would be satisfactory to " the testator. If the testator knew of this clause, evidently there had been some secret understanding between him and Beers as to what was to be done with the money. Beers was to be a mere trustee in disbursing it. Had the testator intended that Beers should have it the 3d item would not appear. Every clause in the will must be read in connection with every other clause, and there may be ground for saying that this 5th item has no effect, as it contemplates a trust without indicating a beneficiary. (See *Matter of Westurn*, 60 Hun, 298; 146 N. Y. 385.)

" The existence of a valid trust capable of enforcement is consequently essential to enable one claiming to hold as trustee, to withhold the property from the legal representatives of the alleged donor." (*Holland* v. *Alcock*, 108 N. Y. 312, 324; *Reynolds* v. *Reynolds*, 224 id. 429, 432.) The total failure to designate the beneficiary of the trust makes the will to that extent an unwritten will, ineffectual for any purpose. (*Reynolds* v. *Reynolds, supra*, 432.) Wills must be executed in compliance with statutory formalities, and are not to be enlarged or diminished by reference to extrinsic testimony which may not be authentic. (*Matter of Fowles*, 222 N. Y. 222, 229.)

But here there was an absolute gift, followed by a request, and in construing the will of a competent testator, fairly made, I think it would be held that the estate vests in the residuary legatees. (*Clay* v. *Wood*, 91 Hun, 398; affd., 153 N. Y. 134; 40 Cyc. 1578 v. b.; also at 1734; 28 R. C. L. 243,

§ 209; *Tillman* v. *Ogren*, 182 App. Div. 672; 227 N. Y. 495.) We quote from *Clay* v. *Wood* (153 N. Y. 140): "Where there is an absolute gift of real or personal property, in order to qualify it, or cut it down, the latter part of the will should show an equally clear intention to do so, by the use of words definite in their meaning, and by expressions which must be regarded as imperative." (*Matter of Gardner*, 140 N. Y. 122; *Roseboom* v. *Roseboom*, 81 id. 356; *Post* v. *Moore*, 181 id. 15.)

In the *Westurn Case* (*supra*) the property was willed to Lewis Burgess, the scrivener, but the following clause was deemed significant and was the prime reason for the holding that there were suspicious circumstances which called for an explanation: " And I hope and believe that the said Lewis Burgess will use and dispose of my said property according to my wishes to him made and to the best of his judgment." The court says: " It is urged by the appellant that this provision of the will, quoted above, is evidence, upon the face of the instrument itself, of the fraudulent design of the proponent in drawing the instrument to practice upon the credulity of the testator by inducing the belief in his mind, that some private instructions, not written in the will, could be carried out by proponent as executor, which he knew, at the time of drawing the same, could not be engrafted upon the same, or in any way affect the positive devise and bequest of the entire estate to him; and while there is no evidence *aliunde* the instrument in support of that subject, it is, perhaps, worthy of consideration in the case, in determining whether, under all the facts and circumstances, the proponent can stand upon the *prima facie* case made by him of testamentary capacity and due execution, or whether the contestants have not cast enough of suspicion upon the *prima facie* case to so shift the *onus* upon the proponent as to require explanation from him. * * * We think, therefore, in this case, the burden was cast upon the proponent of showing that the testator understood the provisions of this will, and that it was not the subject of artifice, fraud or undue influence, by proof in addition to the ordinary evidence required by statute to establish a will and admit it to probate. We do not see how this will can be declared a trust, as there is no *cestui que trust* named in it; and in such case if it created a trust

the trustee would hold it without accountability to anyone, unless it should be held that a resulting trust was created in favor of the testator's heirs-at-law or next of kin, in which case there is no apparent reason for declaring a trust, as the estate would descend to them by the laws of distribution or descent, either directly or through the medium of a personal representative."

It is evident that if the 5th clause in this will had been read to the testator he did not understand that he by it was giving anything more to Beers. If he understood by it that Beers was acting as trustee to distribute the money to others, he was deceived by Beers and the will is the result of affirmative fraud. We quote from *Barnard* v. *Gantz* (140 N. Y. 249, 256): " ' It may be stated as universally true that fraud vitiates all contracts, but as a general thing it is not presumed but must be proved by the party seeking to relieve himself from an obligation on that ground. Whenever, however, the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side, from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other, from weakness, dependence or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair.' "

It is true that this rule is not as rigid in cases of wills as in cases of instruments which take effect *inter vivos*, but only slight circumstances are required to put the strict rule in force where a man writes himself a legatee in behalf of a man ninety-two years old who is weak, feeble and dependent and the contents of the will is known only to that legatee and possibly to the testator. (*Matter of Smith*, 95 N. Y. 516; *Matter of Kindberg*, 207 id. 220; *Matter of Perkett*, 192 App. Div. 846, 848.) Those circumstances are well found within the four corners of this will, when read in connection with the February will, and when it is remembered that of the several wills made by the testator Beers drew two of them,

in each of which he shares liberally, and in the last will takes substantially the entire estate. The evidence does not show any intimate relations between Beers and the testator until just before and following the February will and the services are principally imaginary, as the testator's property was invested in government bonds and securities which needed no particular care. The language of the will in respect to the relations between Beers and the testator is evidently the language of Beers and not of the testator. If Beers gets the principal part of the estate, it comes to him by trick and from the evident misunderstanding by the testator of the 5th clause of the will. If there was a misunderstanding, it results from the ignorance or duplicity of the beneficiary; the result in either event is to give him property which was intended to go elsewhere. The circumstances require evidence to show that the will was the free, untrammeled and intelligent expression of the wishes and intentions of the testator and no such evidence appears. Appellant may contest the will. (Decedent Estate Law, §§ 91, 98, subd. 15a, added by Laws of 1913, chap. 489.) I, therefore, favor a reversal.

Woodward and H. T. Kellogg, JJ., concur; Van Kirk, J., dissents with an opinion in which Cochrane, J., concurs.

Van Kirk, J. (dissenting):

The paper probated is dated April 17, 1919, and was found in the possession of the testator when he died the 3d or 4th day of September, 1920. The will was executed in compliance with the statute; the witnesses were business men, one of whom had had considerable experience in the execution of wills. The probate of the will is attacked in this court on the grounds, *first*, that the testator had not testamentary capacity at the time the will was made; *second*, that the will and its execution were procured by undue influence.

The testator had no relatives, but his wife, who predeceased him, had a son, Col. William H. Corbusier, by a former marriage. Col. Corbusier had a son, William T., whose wife's name was Mabel. It seems that Col. Corbusier, for a considerable time before the death of the testator, had seen little of him. William T. Corbusier and his wife Mabel had lived

with the testator and cared for his home, beginning in 1918. About Christmas time, 1918, William T. Corbusier left and in March, 1919, Mabel Corbusier left. The testator had made a number of wills prior to the will admitted to probate. The last preceding will was dated February 10, 1919, while the Corbusiers were still with him. In that will, as in the will probated, he gave to his friend Charles Sylvester $500 and his pool and billiard tables and equipment. He gave to Johnson Beers $1,000, to Mabel Corbusier the sum of $1,000, and to William T. Corbusier his house and lot in Elmira, including its furniture, together with three notes, which he held against William T. Corbusier, aggregating $700; he authorized his executor to dispose of the rest of his real and personal property and distribute it among his legatees. Soon after the Corbusiers left him in March, 1919, he made the will in question, giving his house and lot and the furnishings to James C. Ranck and reciting that the bequest was in consideration of " his care and maintenance of me during balance of my life time." Evidently Mr. Ranck did not enter upon the performance of this agreement and under date of March 19, 1920, a written agreement was executed between the testator, Henry B. Jones, and Martha Bowes, providing for a transfer of the said house and lot by Mr. Jones to Mrs. Bowes; she agreeing to remain with him during the balance of his lifetime, act as nurse and care for him; the transfer of the property being received by Mrs. Bowes in full consideration for such services rendered under this agreement. On September 8, 1906, testator's wife, Mahala Jones, had deeded to him, in expressed consideration of one dollar, the house in Elmira in which they lived, title of which the testator held until March 16, 1920, when he deeded it to Martha Bowes in pursuance of this written agreement with her. She had worked for him two or three days a week while the Corbusiers lived with him.

This will of April, 1919, is under the circumstances natural and reasonable; in it he made those changes from his will of February, one would expect; he omitted the provisions in favor of Mabel and William T. Corbusier, who had changed their plans and had disappointed him; he had expected them to remain and care for him, but they left him to be cared for

by others. Under the 7th clause of his February will Mabel and William T. Corbusier were given a share of the residue, they being legatees. He may not have wished James C. Ranck to have a share in the residue. If so a clause similar to the 7th clause in the February will could not be inserted in the April will. He knew the contents of the February will; he had Mr. Disney examine it, talked its provisions over with him and later had a better recollection of its contents than did Mr. Disney. It cannot with any certainty be said that Beers has any greater interest under this April will than under the February will; he gets nothing personally under the residuary clause. The deed of the home place to Mrs. Bowes was a reasonable act in view of the facts.

This appellant has no interest under either will and can have no interest in the estate until all former wills have been set aside. If this will be rejected the court will distribute testator's property for him and transfer it to those he had good reason to exclude from participation.

There is some conflict in the evidence as to the physical and mental condition of the testator at the time the will was made. He was about ninety-three years of age at the time of his death. He was somewhat forgetful; his eyesight was poor; for a short time before his death he could read only the headlines of the newspapers, and for a considerable time he had read with the aid of a strong magnifying glass only. There is evidence that he was somewhat careless in his personal habits at the table and about the house and out of the house. He had been out of his house very little for about two months prior to his death. He died in the night unattended. He had for years owned and conducted a pool room in the city of Elmira. Prior to the time he made his will and for months thereafter he went to his pool room practically every day, where he met his friends. Among his friends were Charles Sylvester, Johnson Beers and James C. Ranck.

Two physicians have testified, in answer to hypothetical questions, that, at the time he made his will, he was not mentally competent. The witnesses called by the proponent, especially Mrs. Bowes, gave a description of him, showing that he was entirely competent; and a history of his transactions, all his relations with William T. Corbusier and his

wife Mabel, an examination of his former wills and all the surrounding circumstances, furnish evidence which justified the surrogate in reaching the conclusion that he was competent to make a will and was not unduly influenced. The surrogate saw the witnesses and is better able to judge of the weight that should be given to their testimony than is a court reviewing the evidence upon a printed record.

It was suggested in court that the confidential relation which seemed to exist between the testator and Johnson Beers should be considered. It is true that, when confidential relations are shown to exist, and it is shown that the testator is the weaker party, and the will has been made in favor of the dominant party, this is sufficient evidence to justify the inference or presumption that undue influence has been exercised; but such presumption is a presumption of fact only. It is said in *Matter of Kindberg* (207 N. Y. 220), on page 228: " The rule that a transaction between an attorney and client conferring a benefit or advantage on the former is presumptively invalid, and the burden of relieving himself from that presumption rests on the attorney, is confined to transactions or gifts *inter vivos* and does not apply in all strictness to a gift by will." The presumption or inference which has thus arisen will prevail unless other evidence in the case fairly overcomes it. It has been held that evidence other than the mere factum of the will must be presented to overcome the evidence on which the inference is based. But, where other evidence does exist, tending to show the untrammeled working of the testator's mind, that his will is in harmony with his personal wishes, where the will is not unjust to the natural objects of his bounty, or where none exist, and where the bequest is the natural result of regard or favor and not of overbearing influence, which brought into subjection the will and desire of the testator, we have but a question of fact, considering the presumption or inference and the other proof together; and the question remains for the court to determine upon this proof whether undue influence has been exercised. The burden of proof upon this question is not shifted upon the proponent because there is evidence from which undue influence may be inferred. A misconception which has sometimes been entertained as to this rule was pointedly explained

in *Matter of Kindberg* (207 N. Y. 220, 228, 229) in connection with an error in the charge in that case, and with an expression on the subject in the *Smith Case* (95 N. Y. 516). The rule is a rule of evidence, as is the rule of *res ipsa loquitur*. There is no statute or law which forbids the making of a will in which a substantial bequest is given to a confidential friend. " If fairly made the law does not condemn it. One possessed of property may do with it as he pleases, and may himself select the objects of his bounty." (*Marx* v. *McGlynn*, 88 N. Y. 357, 370, 371, 372.) We think the proof is very meagre of any such confidential relation between deceased and Beers, or of any domination of the latter over the former, such as would raise a presumption of unfair dealing or influence upon deceased in the making of his will. Also we should remember that Mr. Beers is not the only legatee who has a substantial interest under this will.

The law governing the making and execution of wills is not so strict, nor is it intended to be, as to deprive a person of average ordinary understanding of the privilege of making such disposition of his property at death as he may desire. Neither age, nor physical infirmities, disqualify one for making a will. Men may be uncleanly and eccentric and feeble of body and still have testamentary capacity. The inclination of gratitude and friendship toward a confidential friend may be stronger than the feeling for those of the family blood, who are indirectly connected, or were remembered in a former will.

A careful examination of the evidence in this case justifies the conclusion that the will was properly admitted to probate, and that the grounds of contest have none of them been sustained.

The decree and order appealed from should be affirmed, with costs.

COCHRANE, J., concurs.

Decree and order reversed upon the law and the facts and the matter remitted to the surrogate for his further action, with costs to the appellant to abide the event. The court disapproves of the finding of fact that the testator was under no restraint when he executed the will and that the paper propounded is the last will and testament of the testator.