In the Matter of the Estate of JOHN J. McGLONE, Deceased.

Surrogate's Court, Kings County, December 2, 1938.

*Orr & Brennan* [*Philip Zierler* of counsel], for the Irving Trust Company and Thomas F. McGlone, Jr., as executors, etc., petitioners, and for Thomas F. McGlone and Rose Meredith, residuary legatees.

*Andrew F. Van Thun*, for Helena Day McGlone, widow of decedent.

*George A. Voss*, for Ignatius V. McGlone, legatee.

*George A. Voss*, special guardian for Edward McGlone and Robert McGlone, infant remaindermen.

WINGATE, S. It may readily be conceded, even in the absence of the plethora of citations supplied by the petitioners in substantiation of the point, that the denial of an immaterial allegation does not raise a triable issue. The difference of opinion between the court and the present applicant does not involve this question, but is as to whether it is incumbent upon one who seeks to disinherit a surviving widow by reason of an alleged waiver of rights of inherit-

ance made by the prospective bride on the eve of her marriage, to demonstrate that this waiver was secured in a fair and just manner.

The underlying facts of the case have already been related (*Matter of McGlone*, 166 Misc. 636). In essence they are that the present widow, on February 2, 1922, two days before her intermarriage with the decedent, signed a document by which she purported to renounce all rights in his estate. At the time of the former submission, delivery of this instrument by the present widow to the decedent was denied, and the former decision of this court refusing judgment on the pleadings on the motion of the petitioning executors was partially predicated on this fact. Since that time the fact of delivery has been stipulated, wherefore, that issue is eliminated.

There remains, however, the question of whether or not the estate of the deceased husband is, as a primary matter, under obligation to allege and prove that the present document was not secured by the practice of actual or constructive fraud upon the prospective bride.

In the opinion of the court this question must be answered in the affirmative on the bare demonstrations of the pleadings. The principles underlying the doctrine of constructive fraud are elucidated by Judge ANDREWS writing for the court in *Matter of Smith* (95 N. Y. 516). He says (at p. 522): " Undue influence, which is a species of fraud, when relied upon to annul a transaction *inter partes*, or a testamentary disposition, must be proved, and cannot be presumed. But *the relation in which the parties to a transaction stand to each other*, is often a material circumstance and *may of itself in some cases be sufficient to raise a presumption of its existence.* Transactions between guardian and ward, attorney and client, trustee and *cestui que trust*, or persons one of whom is dependent upon and subject to the control of the other, are illustrations of this doctrine. Dealings between parties thus situated, resulting in a benefit conferred upon, or an advantage gained by the one holding the dominating situation, naturally excite suspicion, and *when the situation is shown, then there is cast upon the party claiming the benefit or advantages, the burden of relieving himself from the suspicion thus engendered, and of showing either by direct proof or by circumstances that the transaction was free from fraud or undue influence, and that the other party acted without restraint and under no coercion, or any pressure direct or indirect, of the party benefitted.* This rule does not proceed upon a presumption of the invalidity of the particular transaction, without proof. The proof is made in the first instance when the relation and the personal intervention of the party claiming the benefit, is shown. The law is not so impracticable as to refuse to take notice of the influence of greed and selfishness upon

human conduct, and in the case supposed it wisely interposes by adjusting the quality and measure of proof to the circumstances, to protect the weaker party and, as far as may be, to make it certain that trust and confidence have not been perverted or abused." (Italics not in original.)

The rules thus stated have been established since time immemorial and have repeatedly been enunciated or applied by all of the courts of this State both before (*Nesbit* v. *Lockman*, 34 N. Y. 167, 169. See, also, *Cowee* v. *Cornell*, 75 id. 91, 99) and subsequent (*Matter of Putnam*, 257 N. Y. 140; *Allen* v. *La Vaud*, 213 id. 322; *Barnard* v. *Gantz*, 140 id. 249; *Evans* v. *Trimble*, 169 App. Div. 363; *Gick* v. *Stumpf*, 126 id. 548; *Matter of Rintelin*, 77 id. 142; *Matter of Gallup*, 43 id. 437; *People's Trust Co.* v. *Harman*, Id. 348; *Hayes* v. *Kerr*, 19 id. 91; *Matter of Donnelly*, 157 Misc. 319) to the time of the *Smith* decision.

Whenever a question arises as to the enforcibility of an agreement between two persons standing in close relations the question automatically arises as to whether or not the relationship was one which the law considers confidential and as giving rise to a duty of preliminary explanation by the party asserting the right to the advantage. Certain relationships are so obviously confidential that in respect of them the situation is akin to that in which the doctrine of *res ipsa loquitur* applies. (VAN KIRK, J., in *Matter of Jones*, 199 App. Div. 426, 436.) Prominent in this category are those of parent and child (*Barnard* v. *Gantz*, 140 N. Y. 249), attorney and client (*Matter of Putnam*, 257 N. Y. 140), trustee and *cestui que trust* (*Gick* v. *Stumpf*, 126 App. Div. 548) and guardian and ward (*Matter of Smith*, 95 N. Y. 516). In all of these the relationship is deemed confidential as a matter of law and a burden of exculpatory demonstration immediately attaches to the one seeking to capitalize upon a personal transaction with one in respect of whom he was so situated.

At the other end of the scale is the ordinary transaction of persons between whom no legally recognized confidential relationship exists. Here, whereas fraud or undue influence will invalidate the result attained, there is no innate inference that anything of the sort has taken place, and a preliminary demonstration of justifiable reliance must be made by the person against whom enforcement is sought before any duty of explanation will devolve upon the plaintiff. (*Doheny* v. *Lacy*, 168 N. Y. 213; *Cowee* v. *Cornell*, 75 id. 91, 101; *Absalon* v. *Sickinger*, 102 App. Div. 383; *Thompson* v. *Peterson*, 152 id. 667; *Matter of Carter*, 199 id. 405; *Matter of Jones*, Id. 426; *Matter of Radley*, 228 id. 119.)

The distinction between the two varieties of cases is expressed with especial clarity by Judge GRAY, writing for the unanimous

court in *Doheny* v. *Lacy* (168 N. Y. 213). After discussing the general rule and its applicability to such inherently confidential relations as trustee and *cestui que trust* and attorney and client, he says (at p. 222): " The presumption is one born of a relation of parties, which would create a situation of more or less dependence by one upon the other (*Smith* v. *Kay*, 7 H. L. Cas. 771). While in the relations instanced this rule is generally applied, it is, also, extended to other relations of trust, confidence, or inequality; but its application will then demand some previous proof of the trust and confidence, or of the superiority on one side and of the weakness on the other. The law will not presume it from the ordinary relations between persons, in the business world, or in the family connection. The question as to parties so situated is a question of fact dependent upon the circumstances in each case."

In the case at bar the question as to which rule is applicable depends upon whether the relationship of *fiancée* and prospective husband is one legally recognized as implying especial confidence, similar to that of parent and child. This query has been answered in the affirmative by authorities which are binding here. (*Pierce* v. *Pierce*, 71 N. Y. 154, 158; *Graham* v. *Graham*, 143 id. 573, 580; *Matter of Scott*, 173 App. Div. 270, 272.)

In the *Pierce* case it is said that, after a citation of precedents: " These authorities go very far in holding that the courts require strict proof of fairness, when called upon to enforce an ante-nuptial contract against the wife, and especially when it is apparent that the provision made for the wife is inequitable, unjust, and unreasonably disproportionate to the means of the husband. The rule undoubtedly is, that in such a case every presumption is against the validity of the contract, and the burden of proof is cast upon the husband, or those who represent him, in order to uphold and enforce the same as a valid and subsisting agreement."

It follows, therefore, in the case at bar that the mere pleading and demonstration by the petitioners of the making and delivery of the agreement by the prospective bride would not entitle them to relief. They must do more and allege and demonstrate as a preliminary matter that it was not induced by fraud or inequitable conduct. In compliance with this obligation, they alleged in the petition that the widow " had full knowledge of the nature, terms and effect " of the agreement. Whereas the allegation is possibly subject to some criticism as not wholly reflecting the extent of their obligation of demonstration prerequisite to relief, it was, when liberally construed, sufficient to warrant the denial of a motion by the widow for judgment on the pleadings. The allegation was, however, in any event a material allegation and its traverse by

the answer of the disinherited widow raises a triable issue, which may be determined only as the result of a hearing.

The motion of the petitioners for a rehearing of their motion for judgment on the pleadings is accordingly granted, and on such rehearing the motion for an alteration of the result previously attained is denied, with costs.

Enter order on notice in conformity herewith.