HARRIET C. PIERCE, Administratrix, etc., Respondent, *v.* NORMAN PIERCE, Appellant.

While an ante-nuptial contract, by which the future wife releases all claims against the estate of her husband upon his decease, will be sustained when fairly made, yet, from the confidential relations between the parties, it will be regarded with the most rigid scrutiny; and where the circumstances establish that the woman has been deceived, or induced by false pretenses to enter into the contract, it will be held null and void.

*It seems,* that the presumption is against the validity of such a contract, and the burden of proof is cast upon the husband, or his representatives, to show perfect good faith; and strict proof will be required, particularly where the provision made for the wife is inequitable and unreasonably disproportionate to the means of the husband.

(Argued September 27, 1877; decided November 13, 1877.)

Appeal from judgment of the General Term of the Supreme Court, in the third judicial department, modifying a decree of the surrogate of Delaware county, made upon the final accounting of respondent as administratrix of the estate of Nathan Pierce, deceased. (Reported below, 9 Hun, 50.)

Before the marriage of respondent and said Nathan Pierce, they executed an ante-nuptial agreement; and the only questions upon this appeal were in reference thereto.

By the ante-nuptial agreement, Pierce agreed to pay or cause to be paid to his intended wife, if she survived him, $500 for her sole and separate use. In consideration of the $500 "paid to her," she covenanted and agreed that the money so assigned should be in full satisfaction of her dower, and should bar her from claiming the same, and that she would not claim any share in his personal estate, unless some part was given her by his will, or some act done subsequently to the execution of the agreement.

Nathan Pierce died intestate ; he never paid his wife the $500, and made no settlement of the same upon her.

The circumstances under which the contract was made and executed are set forth in the opinion. At the time of the execution of the agreement, Pierce had property valued at over $25,000. He left real estate, and about $6,000 of personal property, after payment of debts, etc., to be distributed on the accounting. The surrogate held the ante-nuptial contract valid and binding, credited the widow with the $500, and allowed her no distributive share of the estate. The General Term struck out the credit of $500, and allowed to her one-third of the sum to be distributed.

*W. Gleason*, for appellant. In construing and executing marriage articles, they will be interpreted liberally, free from the restraint of technical rules, so as to carry out the presumed intent of the parties. (*Ardis* v. *Printup*, 39 Geo., 648; *Gause* v. *Hale*, 2 Ired. [N. C.] Eq., 241; *Hook* v. *Lee*, 4 id., 157; 11 Lawrence, 380; *Huchings* v. *Dixon*, 11 My.,

29; 1 S. & M. [Miss.] Ch., 355; *May* v. *May*, 7 Flor., 207; Dessau, 209; 1 Hill, 101; 1 McMullin, 358; *Tubb* v. *Archer*, 3 H. & M. [Va.], 399; Tyler on Infancy, §§ 332, 333; *Dygert* v. *Remerschnider*, 32 N. Y., 642; 1 Bald., 356; *Hind* v. *Langworth*, 11 Wheat., 199; *Harvey* v. *Ashley*, 3 Atk., 607; 8 Wend., 331, note; 3 Bosw., 332; 1 Pars. on Con. [6th ed.], *72; id., *331; *Earl of Buckingham* v. *Drury*, 2 Edm., 60–75.) Equity compels a specific performance of ante-nuptial contracts. (Tyler on Infancy and Coverture, § 332; 18 Ves., 92; 3 J. Ch., 550; 8 Gray, 542; 2 Story Eq. Jur., 983; 2 Pars. on Con., *72; 1 id., 331; Wil. Eq., 479; 2 R. I., 244; *Culver* v. *Smith*, 8 B. Mon. [Ky.], 128; *Houghton* v. *Houghton*, 14 Ind., 565; *Davilla* v. *Davilla*, 2 Vern., 724.)

*J. H. Maynard*, for respondent. The execution of the ante-nuptial contract, having been obtained by fraud, was void. (*Sears* v. *Shafer*, 6 N. Y., 268; *Botsford* v. *McLean*, 45 Barb., 378; *Woodward* v. *Woodward*, 5 Sneed, 49; *Tarbell* v. *Tarbell*, 10 Al., 278; *Taylor* v. *Rickman*, 1 N. C. [Bush Eq.], 278; *Kline* v. *Kline*, 57 Penn. St., 120; *Kline's Estate*, 64 Pa., 122; *Pratt* v. *Foote*, 9 N. Y., 463; *Schenck* v. *Dart*, 22 id., 420; *Robinson* v. *Raynor*, 28 id., 494.) The ante-nuptial contract could not be interposed as a bar to plaintiff's claim to a distributive share in her husband's estate. It did not operate as a release, or by way of estoppel. (*Hastings* v. *Dickinson*, 7 Mass., 153; *Gibson* v. *Gibson*, 15 id., 106; *Vance* v. *Vance*, 8 Shep. 364; *Sullings* v. *Richmond*, 5 Al., 187; *Springsteen* v. *Powers*, 3 Rob. 483.) Plaintiff's husband having died without performing the covenants on his part, she was released and discharged from the covenants on her part. (1 Greenl. Cruise, 203, 317; Clancey's Rights of Married Women, 103; Tyler on Infancy and Cov., 465; *Pyke* v. *Pyke*, 1 Ves., Sr., 376; *Mitford* v. *Mitford*, 9 Ves., 87; *Hastings* v. *Dickinson*, 7 Mass., 153; *Gibson* v. *Gibson*, 15 id., 106; *Woodward* v. *Woodward*, 5 Sneed, 49; *Bliss* v. *Sheldon*, 7 Barb., 152; 8 N. Y., 31.)

Opinion of the Court, per MILLER, J.

MILLER, J. Upon the accounting of Mrs. Pierce, as administratrix of her deceased husband's estate, before the surrogate, it was held that the ante-nuptial agreement entered into at the time of their marriage was valid and in full force, and for that reason she was not entitled to a share, as his widow, in the distribution of his estate, and was only allowed the amount named in said agreement. The agreement referred to purported to have been entered into in contemplation of marriage, and for the purpose of making provision for a fit and proper settlement by the deceased, for the benefit of his intended wife, and thereby the deceased agreed that if the marriage was had and solemnized, he would, in case she survived him, pay or cause to be paid to her, the sum of $500 for her sole and separate use; and she agreed, in consideration of the "money paid to her," that said money should be in full satisfaction of her dower, and bar her from claiming the same, or any share of his personal property, unless given to her.

We are of the opinion that the contract in question cannot be upheld, for the reason that the evidence establishes, beyond any controversy, that it was executed by the respondent, under a belief—which was created by the conduct and declarations of the deceased—that it contained more beneficial provisions in her favor than were contained in the same, and that the deceased, taking advantage of the confidential relationship existing between him and the respondent, who was the intended wife of the deceased, he was chargeable with fraud and misrepresentation in procuring her signature to the same.

Ante-nuptial contracts, whereby the future wife releases her claim to her right of dower, and all other rights to the estate of her husband upon his decease, are fully recognized in law. When fairly made and executed without fraud or imposition, they will be enforced by the courts. The surrender and release of rights to be acquired by the intended wife by the marriage relation must, however, be regarded with the most rigid scrutiny; and courts will not enforce contracts of this

nature against the wife where the circumstances establish that she has been over-reached and deceived, or been induced by false representations to enter into a contract which does not express or carry out the real intention of the parties. The relationship of parties who are about to enter into the married state, is one of mutual confidence, and far different from that of those who are dealing with each other at arms length. This is especially the case on the part of the woman; and it is the duty of each to be frank and unreserved when about to enter into an ante-nuptial contract, by a full disclosure of all facts and circumstances which may in any way affect the agreement. (*Kline* v. *Kline*, 57 Penn., 120.)

In the case cited, which involved the validity of a marriage contract, it was held there was error in the charge of the judge to the jury that the woman was bound to exercise her judgment, and take advantage of the opportunity that existed to obtain information — if she did not do so, it was her fault; and that the parties were dealing at arms' length. (See, also, case of *Kline's Estate*, 64 Penn., 122, which holds that parties to such a contract occupy a confidential relation; and *Tarbell* v. *Tarbell*, 10 Allen, 278; *Fay* v. *Rickman*, 1 N. C. [Bush Eq.], 278; *Woodward* v. *Woodward*, 5 Sneed, 49.) These authorities go very far in holding that the courts require strict proof of fairness, when called upon to enforce an ante-nuptial contract against the wife, and especially when it is apparent that the provision made for the wife is inequitable, unjust, and unreasonably disproportionate to the means of the husband. The rule undoubtedly is, that in such a case every presumption is against the validity of the contract, and the burden of proof is cast upon the husband, or those who represent him, in order to uphold and enforce the same as a valid and subsisting agreement. It is also a well-settled principle that a court of equity will interpose its power to set aside an instrument executed between parties who stand in confidential relations, when there is evidence showing fraud, or even when it appears that undue influence has been exercised, when one party is so situated as to exercise a con-

trolling influence over the will, conduct, and interests of the other. (*Sears* v. *Shafer*, 6 N. Y., 268; *Nesbit* v. *Lockman*, 34 id., 167.) So, also, when one party is intrusted to reduce a contract to writing, he is bound to do so faithfully and truly; and any variation from it, by omitting some of its terms, or by inserting provisions not embraced in it, if not known to the other party and distinctly assented to by him, is a clear fraud. (*Botsford* v. *McLean*, 45 Barb., 478–488, and authorities cited.) While parties to a written agreement should look out for themselves, and ordinarily the written contract is presumed to express their common intention, yet, when one occupies a confidential relationship to the other, and was intrusted with reducing it to writing, and it is clearly made to appear that the written contract was untrue, and misrepresents and misstates the real intention as understood and agreed upon, it cannot stand. More especially is this rule applicable when undue advantage has been taken, and a fraud perpetrated. Within the rules referred to, a case is made out by the evidence which establishes that the alleged ante-nuptial agreement was nugatory and void. The testimony is uncontradicted and unimpeached, that when the respondent signed the contract, she acted under a belief and conviction that she was thereby to receive the sum of $500 in cash, a deed of a house and lot, and $500 if she survived the deceased. The contract was stated or read to the respondent as containing those provisions, before the proposed marriage; and when it was assented to by her, at the time when the contract was finally executed, the deceased stated to the clergyman who performed the marriage ceremony and witnessed the written agreement, that it was unnecessary for him to read it — intimating that the contents were known and understood. It was not read at that time, nor does it appear distinctly that it was ever read by the respondent at any time. It is also proved that after the marriage, on one occasion, the deceased asked the respondent if she did not wish she had the contract, and she replied it was not good for anything, unless he paid her the $500 he had agreed to.

And in the summer of 1860, the respondent stated to the deceased that he had agreed to give her the house and lot, and asked him why he did not do it; and he replied, that perhaps she should have the house he lived in, or to that effect. It thus appeared that he acquiesced in the statement made as to the contents of the contract, and did not deny that it contained the provisions claimed by her. The proof referred to shows that he kept it all the time in his own possession, or under his own control; and when called upon to fulfill his engagement, he failed to deny the statements as to the agreement actually made, and virtually admitted that they were correct.

It is plain that the respondent understood the contract as containing the provisions stated by the deceased, and that the deceased understood that such was her belief as to its contents. He permitted her to act on this hypothesis, and while laboring under an entire mistake, without correcting it, and it does not rest with his heirs now to claim that it was otherwise than the deceased stated and the respondent understood at the time. She married him under such a belief, and he having knowledge that such was her understanding of the agreement, those who represent him are estopped now from insisting that the contract was valid and should be enforced.

For the reasons stated, the alleged contract was invalid and void, and the General Term very properly modified the decree of the surrogate by allowing the respondent a distributive share, as widow, in the estate of the deceased.

No other question raised demands comment, and the judgment of the General Term should be affirmed, with costs.

All concur, except RAPALLO, J., absent.

Judgment affirmed.