These are the only statutory provisions, so far as we are aware, for the substitution of a second magistrate under conditions such as here exist, and we are of the opinion that the case is not brought within the express terms of either of them. On the contrary, it appears affirmatively that the information charged that the offense was committed within the town of Cato; and, this being the case, the magistrate before whom the information was lodged should have directed that the defendant be brought before a magistrate of that town. Instead of doing this, however, he made the warrant returnable before himself, and upon its return proceeded to organize a court of special sessions, and to take all necessary steps to obtain full jurisdiction, before ordering the defendant to be taken before a magistrate of the town of Cato. Under these circumstances no change was authorized, and consequently the magistrate before whom the trial was had failed to acquire jurisdiction of the case. People v. Norton, 76 Hun, 7, 27 N. Y. Supp. 851. For these reasons, we think the judgment of the county court and of the court of special sessions should be reversed, and the defendant discharged from arrest.

Judgment of county court and of court of special sessions reversed, and the defendant discharged from arrest.

SPRING and WILLIAMS, JJ., concur. LAUGHLIN, J., concurs in result upon ground last stated, but is of opinion that the evidence is insufficient to warrant conviction.

---

(57 App. Div. 9.)

### GREEN v. CRANE et al.

(Supreme Court, Appellate Division, Fourth Department. November, 1900.)

1. HUSBAND AND WIFE—ANTENUPTIAL AGREEMENTS—SIGNATURE — GENUINE-
   NESS.
   Where a husband claimed property of his wife under an antenuptial agreement, the genuineness of the wife's signature will be presumed, in the absence of highly-probative evidence to the contrary, since to decide otherwise would be equivalent to finding the husband guilty of forgery.

2. SAME—EVIDENCE.
   The genuineness of a signature to an agreement was attacked. Witnesses familiar with the handwriting and signature of the signer testified that it was genuine. Other witnesses compared it with genuine signatures in evidence, and strengthened such testimony. An expert testified that the signature was not genuine, but acknowledged that his testimony was weakened by facts shown on his cross-examination. Other witnesses who controverted its genuineness had never seen the signer write, and were not familiar with her signature. Held, that the evidence showed the signature to be genuine.

3. SAME—UNDUE INFLUENCE—PRESUMPTION.
   Where a widow over 60 years old, accustomed to business transactions and to the signing of checks and making of leases, made an antenuptial agreement conveying her property to a man about her own age, who was not shown to possess or to have exercised any extraordinary cunning, there was no such inequality between the parties as to raise a presumption that the woman was unduly influenced.

4. SAME.
   Where a woman fully advised as to the conditions of her future husband's estate, and well acquainted with business methods, made an ante-

nuptial contract providing that the survivor should take all the estate of the other, the fact that the husband had no estate would not raise the presumption of undue influence on his part.

**5. SAME—FRAUD.**

Where an antenuptial agreement authorized each party to take "immediate possession" of the property of the other, but the subsequent conduct of the parties showed that it was their intention that the survivor should take, and that "immediate possession" related to possession after the death of one of the parties, there was no inequality in the agreement which would raise a presumption of fraud.

Action by Kelly W. Green against Mary J. Crane and others. Judgment for plaintiff affirmed on report of referee.

The following is the opinion of HAWLEY, Referee:

This action is upon an antenuptial agreement made between Kelly W. Green and Hannah M. Fox, dated August 18, 1894. The agreement was followed by the marriage contemplated. The parties lived together as husband and wife for a time, thereafter became estranged and separated, and some time after such separation the wife died intestate. She left no descendant, but left the defendants, her only next of kin and heirs at law. She died seised of a house and lot in Canandaigua. Conveyance thereof was demanded by the plaintiff of the defendants, under the antenuptial agreement, and refused, and this action is brought to compel such conveyance.

The defendants dispute the genuineness of the signature of Hannah M. Fox to the antenuptial agreement. I think it very clear that this issue must be decided in favor of the plaintiff. To decide otherwise would be equivalent to finding the plaintiff guilty of forgery, and the presumption against the commission of crime is not to be overcome except by evidence of a high degree of credibility. Hoffman v. Hoffman, 6 App. Div. 84, 39 N. Y. Supp. 494. But it is not at all necessary to invoke this rule. The plaintiff proved the genuineness of the signature of Mrs. Fox by the opinions of a number of witnesses of good character and intelligence, who had seen her write and had had abundant opportunities to become familiar with her handwriting and signature. This evidence was fortified by the testimony of other witnesses based upon comparisons of signatures which were in evidence. The defendants called a professional expert, who expressed an opinion that the disputed signature was not genuine, based upon a comparison of a few genuine signatures with an enlarged photograph of the disputed signature. In the course of his study and measurements and minute criticisms of the signatures under his observation, he discovered several variations in the disputed signature from the genuine signatures which had been submitted to him; and these which he considered departures from the genuine signatures, and therefore indicative of forgery in the disputed signature, he detailed. But upon his cross-examination many other signatures confessedly genuine were presented to him, and it was found that the various characteristics which had been pointed out by him as evidences of forgery existed in one or more of the genuine signatures, and he frankly and with great candor admitted that these facts weakened, if they did not destroy, the effect of his previous observations. And, besides, the rule is that "an opinion as to handwriting should depend not so much upon mathematical measurements and minute criticisms of lines, nor their exact correspondence in detail when placed in juxtaposition with other specimens, as upon its general character and features, as in the recognition of the human face." Miles v. Loomis, 75 N. Y. 288; In re Albinger, 30 Misc. Rep. 187, 63 N. Y. Supp. 744. The defendants also called some witnesses, but none of them, I believe, were persons who had seen Mrs. Fox write, or were familiar with her signature, but whose opinions were expressed against the genuineness of the disputed signature. The preponderance of evidence, not only as to quantity, but as to quality, in favor of the genuineness of the signature, is marked. And this volume of evidence is re-enforced by an inspection of the large number of genuine signatures which are produced in evidence. It is also to be observed that the defendants failed to call witnesses upon this branch of the case who were familiar with

the signature of Mrs. Fox, although it is probable that many such might easily have been obtained. Upon this conflict of evidence, I am clearly of opinion that the signature of Mrs. Fox to the agreement in question is genuine.

But the defendants insist that, conceding the genuineness of the signature, the antenuptial agreement is void for undue influence, or for fraud, actual or constructive; and they invoke the rule that, inasmuch as the parties to the agreement were betrothed and on the eve of marriage, they occupied such a relation to each other that the agreement is presumptively fraudulent, and the burden is upon the plaintiff to negative that presumption. The existence of such a rule is not open to discussion, but the difficulty lies in determining in what cases and to what extent it shall be applied. It is believed that the existence of the rule depends upon the assumption that because of the intimate relation of the parties their situation is unequal, so that they are not dealing at arm's length, and the presumption is that the weaker party has yielded to influence undue, or has been the victim of confidence misplaced because of relation. But there is no conclusive presumption that the woman is the weaker party. The rule is sometimes applied to protect the man. Rockafellor v. Newcomb, 57 Ill. 186. It would seem, then, that the application of the rule would necessarily depend somewhat upon the character of the parties to the agreement, and somewhat upon the character of the agreement itself. As to the character of the parties to the agreement here: They were, respectively, about sixty-seven or sixty-eight years of age. Quite a number of letters passing between them are in evidence, which betray none of the enthusiasm of youthful passion, and give no evidence that one was under the domination or overmastering influence of the other. Tiernan v. Binns, 92 Pa. St. 248. Mrs. Fox was a widow, accustomed to business transactions, having a life income from her husband's estate, and owned the real property in controversy in this action. She was accustomed to the signing of checks, leases, and to the conduct of business transactions. At least one letter of hers shows her to be a woman of considerable vigor of character and force of expression. Mr. Green has appeared before me, and he gave no indication of any special force of character, cunning, or artfulness, which would suggest from his manner and appearance the exercise of any undue influence or craft or deceit. Under these various circumstances, and others appearing incidentally in the testimony and the conduct of the trial, I am unable to find that the parties were unequal in situation; and I am certainly unable to find that Mrs. Fox was unequal in situation to Mr. Green, or that in consequence of their intimate relation he did or could exercise a dominating or undue influence over her.

Turning now to the agreement itself, I am unable to find upon the face of the agreement any indications of fraud, concealment, or undue influence. The defendants base their contention largely upon the claim that the agreement is unequal and unjust, for the reason that Mrs. Fox had more property than Mr. Green. But the evidence shows that Mrs. Fox prior to the execution of the agreement was advised that Mr. Green had lost his property; that she made inquiries in respect of him, and, among the results of such inquiries, received that information. The agreement recites upon its face that he had no real estate. It was exactly equal in every respect, if the parties had been exactly equal in estate. This is not a case, as are most of those to which my attention has been called in the able and extensive brief of the defendants, where the wife, without consideration, surrendered all of her rights in the husband's estate in case she survived him. But this agreement provided that the survivor should take all of the estate, whatever it was, of the party who did not survive. The gift is to, and not by, the survivor. But the defendants contend that the agreement was unequal, and therefore presumptively or constructively fraudulent, because it authorized each to take "immediate possession" of the estate and property of the other. I do not think that such is the true construction of the agreement. The defendants are not understood to claim that the word "immediate," in the agreement, means that they were to take possession immediately upon the execution of the agreement, and before the marriage. It is apparently conceded that the word "immediate" is not to have its literal signification, but that

its operation is to be postponed to some time subsequent to the day of the execution of the agreement. It appears, as to each party, in a clause which begins, "I hereby revoke and annul all wills by me made, and I direct that my wife [or my husband] take immediate possession," etc. It would seem to be quite clear that the intention of the parties was that the survivor upon the death of the other should take immediate possession of the property of the deceased. The gift of each to the other was to the survivor, of the property possessed by the one first dying, at the time of his or her death. Such was the practical construction which the parties themselves gave to the agreement. There is not a particle of evidence that Mrs. Fox did take possession of Mr. Green's property, or that he took possession of hers. On the contrary, the evidence indicates that she continued to invest her surplus income in certificates of deposit in her own name, controlled her real estate, and conducted her business precisely as she did before the marriage. There is no affirmative evidence of concealment, undue influence, false representations, or fraud; and I am of opinion that upon all the evidence in the case, including the agreement itself, the burden was not upon the plaintiff to prove affirmatively the absence of undue influence or of fraud, actual or constructive, but that this is a case where "the trust and confidence or superiority on one side, or weakness on the other," is not presumptive, but must be proved. 1 Beach, Mod. Eq. Jur. § 114; Cowee v. Cornell, 75 N. Y. 101. But, if we assume that the burden is upon the plaintiff, I am of opinion that it has been successfully borne; that the agreement itself, with its disclaimer upon its face that Green was the owner of any real estate; the inquiries made by Mrs. Fox, and the information received by her, as to the financial situation of Mr. Green; her statements indicative of the idea that she was not after property, but had enough for both; her avowal that she did not desire her relatives to succeed to her estate; that they had no concern or business with her financial affairs; that she did not care that Green had no property; that he was a good man and she was going to take care of him; and other circumstances appearing in the testimony; together with the age of the parties; the experience of Mrs. Fox in business transactions; the appearance and character of Green, as exhibited upon the stand and the correspondence between the parties; together with the fact that after the marriage and the estrangement and separation the wife made no effort to set the agreement aside (Ahrens v. Kent, 24 Wkly. Dig. 147; 1 Beach, Mod. Eq. Jur. § 138),—are inconsistent with the defendants' contention that there was undue influence or actual or constructive fraud, and are amply sufficient to affirmatively show the contrary. The agreement, then, having been duly executed, being free from undue influence or actual or constructive fraud, is one which is favored by the courts, and is to be enforced in equity according to the intention of the parties. Johnston v. Spicer, 107 N. Y. 185, 13 N. E. 753. And there must be judgment accordingly.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Wynkoop & Rice, for plaintiff.
Thomas H. Bennett, for defendants.

PER CURIAM. Judgment affirmed, with costs, on opinion of HAWLEY, Referee.

ADAMS, P. J., not voting.