George T. Vandermeulen, S.
W. Everett Moore died a resident of the Town of Holland on December 15, 1941. On December 22, 1941, his last will and testament was duly admitted to probate in this court and letters testamentary issued to William Evans, named executor in said instrument. The will is dated December 2, 1936, and leaves all of his property, both real and personal, to his three daughters, Lottie Y. Willett of Strykersville, Nora 0. Kanner and Helen E. Seadeek, both of Holland.
Shortly thereafter, Mr. Moore’s widow filed and served a notice of election under section 18 of the Decedent Estate Law. The executor neither acknowledged nor denied the validity of said notice and in April, 1942 this proceeding was commenced by the widow to determine that she is entitled under the provisions of section 18 of the Decedent Estate Law to elect to take her share of the estate of W. Everett Moore as in intestacy.. The executor answered the widow’s petition, setting up in the answer an *787 antenuptial agreement under the terms of which certain provisions are made for Mrs. Moore and in which she expressly waived all rights to Mr. Moore’s estate which she might otherwise have. This agreement is dated December 3,1936, and was acknowledged December 7, 1936, and recorded in the Erie County Surrogate’s Court on May 9,1942, in Liber 574 of M & 0 at page 591.
Thereafter the proceeding came on to be heard before the Surrogate, and, after some preliminary proof, the executor moved for dismissal. The motion was denied and the widow given permission to reply. Later a reply was filed which attacks the antenuptial agreement on the ground of fraud and on these pleadings the matter was finally heard.
It appears that Mrs. Moore (formerly Mrs. Rogers), before her marriage to Mr. Moore, had kept house for him for nine months. It further appears that on the 13th of December, 1935, about one year before the making of the antenuptial agreement relied upon by the executor and legatees in this proceeding, W. Everett Moore and Wilhelmina Rogers entered into a previous antenuptial agreement prepared by Wells W. Parker, a well-known attorney who has practiced law for many years at East Aurora, New York. It appears that both parties to this agreement signed the same at Mr. Parker’s office and acknowledged before him as a notary public and that before the signing thereof the nature and effect of the instrument was explained to the petitioner and Mr. Moore by Mr. Parker.
Mr. Moore made his will about a year later on December 2, 1936, and the following day, December 3, 1936, the petitioner and Mr. Moore entered into a second antenuptial agreement dated and acknowledged that day before Mr. Laidlaw and drawn by him. This provided for the payment of $2,000 to the widow and that the deceased waive all right to participate in her estate. Thereafter the agreement was altered simply by the addition of a further paragraph allowing the petitioner the privilege of purchasing from Mr. Moore’s estate a house previously bought by Mr. Moore from the petitioner. With such addition, the agreement in its final form was executed and acknowledged by both parties on December 7, 1936, before Mr. Laidlaw as notary public.
A comparison of the antenuptial agreement of December 13, 1935, with that of December 7,1936, discloses that they are practically identical, except that the last agreement provided for the payment of $2,000 to Mrs. Moore instead of $1,500 as in the agreement drawn by Mr. Parker and except for the addition of the privilege given Mrs. Moore to buy back the house, which was not contained in the agreement drawn by Mr. Parker. Copies *788 ' of each of these agreement's were furnished to Mr. Moore and Mrs. Rogers upon the execution of each and upon their execution the substances and effect thereof were explained to the parties. It appears that neither Mr. Parker nor Mr. Laidlaw informed Mrs. Rogers upon the execution of the agreements of the total amount of property which Mr. Moore owned and that neither actually knew the amount of his property.
The agreement of December 7, 1936, was signed not later than 7:00 p.m. and the parties were married at 8:00 p.m. that same evening. It was the second marriage for each of them.
■ Mr. Moore at the time of his second marriage had three daughters for whom he provided in his will. He was about 75 years of age at the time of his second marriage and about 80 at the time of his death. Mrs. Moore stated she was 66 years old, which would have made her about 61 at the time of her second marriage.
The inventory in the estate shows that property of the appraised value of about $1,000 has been set off to Mrs. Moore in addition to the $2,000 provided in the antenuptial agreement.
Certain testimony by Mrs. Moore was given, commencing with the following question and answer: “ Q. What time did you sign that agreement? A. We had our supper that evening around six o’clock ” and ending with: “ Q. Did you ever acknowledge it before Mr. Laidlaw? A. No, sir.” This was received subject to a motion to strike it out and decision reserved. The testimony is stricken out.
Mr. Laidlaw testified as to the acknowledgment as a witness for the petitioner. Had he answered the questions as a witness for the respondent, I would have allowed the foregoing testimony of Mrs. Moore in evidence. (See Boyd v. Boyd, 164 N. Y. 234.)
It is claimed by the widow that in the making and execution of this agreement fraud and deceit was practiced by the deceased. There is no evidence of oral or written fraudulent or deceitful statements, connivance or coercion on the part of the deceased to induce Mrs. Moore to sign the agreement, but the petitioner claims that the confidential relationship existing between petitioner and decedent casts upon the executor the burden to show that the agreement was fair and equitable. To support this contention she relies upon Pierce v. Pierce (71 N. Y. 154) and Graham v. Graham (143 N. Y. 573). The facts in both of these cases are much stronger and differ considerably from those in the instant case.
In the Pierce case the court gave the reason for its opinion (p. 157), when it said: “We are of the opinion that the contract in question cannot be upheld, for the reason that the evidence establishes, beyond any controversy, that it was executed by *789 the respondent, under a belief — which was created-by the conduct and declarations of the deceased — that it contained more beneficial provisions in her favor than were contained in the same, and that the deceased, taking advantage of the confidential relationship existing between him and the respondent, who was the intended Avife of the deceased, he was chargeable Avith fraud and misrepresentation in procuring her signature to the same.”
In Graham v. Graham {supra) the facts are discussed at length and justify the decision.
This court believes that Matter of Rogers (250 App. Div. 26), lays down the proper rules to be folloAved in controversies of this nature. The Court of Appeals having denied the motion for leave to appeal (274 N. Y. 642) must have been in accord with the Appellate Division, Second Department. In that case the court said (pp. 28-29): “As to whether or not a presumption arises against a husband in a transaction such as is here involved: There are eases, Avhere the subject-matter involved was the property of a husband, which hold that transactions respecting such property did not give rise to any presumption against the husband, or did not, from the mere relationship (husband and wife), generate constructive fraud. {Donlon v. Donlon, 154 App. Div. 212; Green v. Benham, 57 App. Div. 9, 14.) The true rule respecting such presumptions or burden of proof seems to be (Cowee v. Cornell, 75 N. Y. 91, 101) that it is a ‘ question of fact dependent upon the circumstances in each case. There is no presumption of inequality either way from these relations merely. ’ But when it appears prima facie that the parties have been dealing Avith each other under circumstances of inequality, then a presumption arises as against the husband, especially if the transaction has resulted in detriment to the wife. ’ ’
In the Matter of McGlone (258 App. Div. 596, 598-600, revd. on other grounds 284 N. Y. 527), is found this view:
“ The first question is whether on the foregoing proof a presumption of constructive fraud arose from the mere relation of the parties at the time the February 2, 1922, instrument was signed, and whether because of such a presumption, the executors Avere obligated to adduce affirmative proof that the parties dealt Avith each other on terms of equality and fairness and that the act of Mrs. Snyder was voluntary and well understood.
“ The respondent invokes such a presumption. It concerns elements which are a species of fraud. The general rule is that fraud Adtiates all contracts, but that it is not presumed. An exception arises when the relations of the parties to a contract evoke a presumption of constructive fraud, which presumption requires one invoking the contract to prove affirmatively that *790 it was not the produce of undue influence, inequality, overreaching, deception or mistake. This presumption is ordinarily Applied to the relationship of guardian and ward, trustee and cestui que trust, attorney and client, and physician and patient. It is also applied to other close relationships when it is affirmatively established by proof of circumstances that the parties are not dealing on an equal basis. (Cowee v. Cornell, 75 N. Y. 91, 99.) The presumption does not arise from the mere relation of parent and child. (Cowee v. Cornell, supra, p. 101; Carpenter v. Soule, 88 N. Y. 251, 256; Jones v. Jones, 137 N. Y. 610, 613; Williams v. Whittell, 69 App. Div. 340, 344.) Under the rule which stems from the foregoing cases, no presumption arises merely from the equally close relation of husband and wife. (La Tourette v. La Tourette, 54 App. Div. 137, 138; Green v. Benham, 57 App. Div. 9, 14; Donlon v. Donlon, 154 App. Div. 212, 216, 217; Matter of Rogers, 250 App. Div. 26, 28, leave to appeal denied, 274 N. Y. 642; 30 C. J. 668, § 244.) These cases enforce the rule that in such relationships, whether a presumption of inequality or constructive fraud arises ‘ is a question of fact dependent upon the circumstances in each case. There is no presumption of inequality either way from these relations merely.’ (Cowee v. Cornell, supra, 101.) ‘ The law does not presume aught ’ from this type of mere relationship. (Williams v. Whittell, supra, p. 344.) Judicial utterances, invoked to support a contrary view, are to be found only in cases, otherwise authoritative, where there was affirmative proof of circumstances of inequality which raised a presumption of constructive fraud and shifted to the proponent of the instrument the burden of going forward with proof that it was executed with understanding, without overreaching and free from any vitiating element. It is when a vitiating element, even though slight, appears that such an agreement is subjected to searching scrutiny. The latter type of cases involving the relationship of parent and child (Green v. Roworth, 113 N. Y. 462; Barnard, v. Gantz, 140 N. Y. 249), and the relationship of husband and wife (Pierce v. Pierce, 71 N. Y. 154; Graham v. Graham, 143 N. Y. 573; Lamb v. Lamb, 18 App. Div. 250) is not applicable here. When properly read and analyzed, they manifest no essential conflict with the cases which control the instant case.
“ The burden of proving that the instrument of February 2, 1922, was validly executed rested upon the executors. (30 C. J. 668, § 244; Matter of Dunn [Iowa] 224 N. W. 38.) The unchallenged proof that this instrument was genuine was sufficient to establish prima facie that it was binding upon the widow. (Pimpinello v. Swift & Co., 253 N. Y. 159, 162; Matter of Stone, *791 272 N. Y. 121, 124.) The executors were not obligated to come forward with further proof in the absence of proof from the widow indicating that she dealt with her prospective husband under circumstances of inequality, or with lack of understanding of the effect of her act. If such proof, even though slight, had been forthcoming, the burden or duty of going forward to rehabilitate the prima facie binding force of the instrument would then have shifted to the executors. The widow, in seeking to repudiate her solemn writing, was not aided by or armed with a presumption of inequality {La Tourette v. La Tourette, supra) in the absence of some proof casting suspicion upon or tending to vitiate the instrument.”
In the instant case, the circumstances do not establish facts from which a presumption arose against the husband. It is true that the widow had no legal advice but she had ample time in which to secure it. Mrs. Moore was given a copy of the agreement executed December 7, 1936, on December 3, 1936. The testimony shows the attorney read the agreement to both parties and she read her copy, as did the testator. Furthermore, she was advised what she was releasing. It is significant that Mrs. Moore did not deny this. Moreover, in 1935 an agreement similar in character was drawn by Mr. Wells Parker, an attorney of East Aurora, New York, and signed by both parties. The attorney testified that to the best of his recollection he explained it to her; that it was read over and she was given a copy. This agreement was subsequently abandoned and the parties did not marry at that time. She did not, therefore, approach the signing of the last agreement, on December 7,1936, inexperienced and not without a considerable period of time for reflection upon the meaning of such an agreement and within which to acquaint herself with the financial worth of Mr. Moore, if she so desired.
She had been his housekeeper for nine months. The Town of Holland, in which they lived, is a small community. The deceased apparently was engaged in no occupation. He had sold his farm and had purchased Mrs. Moore’s home (formerly Mrs. Rogers) which they subsequently occupied. He was an old man. His income must have come from his property. Mrs. Moore must have, known approximately what the annual cost of their living was. The safe that contained his papers was in his home during the nine months she was his housekeeper. While she might not have known his entire worth, nevertheless she must have gleaned enough knowledge from all the circumstances to inform her that' $2,000 was considerably less than her intestate share would have been in the event of his death. From a standpoint *792 of age she was at no disadvantage inasmuch as she was 14 years younger than the deceased. The only conclusion to draw is that despite all this, she was satisfied with the agreement when it was executed. She had an opportunity of consulting a lawyer and he would have advised her, in all probability, to ascertain the financial circumstances of the decedent. There was no legal obligation on the part of the deceased to voluntarily inform her of his worth.
There could be situations where failure by a spouse to disclose the true value of his property, and even without any misstatement of value, would be deemed a vitiating circumstance which would make the agreement subject to searching scrutiny and might be the deciding factor for the widow, but such is not the situation in the instant case.
The petition praying for a decree determining that the petitioner (widow) is entitled under the provisions of section 18 of the Decedent Estate Law to take an intestate share of the estate of the decedent herein is dismissed.
Submit decree.