Van Voorhis, J.
The will made no provision for the widow by reason of an antenuptial agreement whereby decedent and his widow each waived any right in the estate of the other. In this probate proceeding the proponent moved for an order striking, the appearance of the widow and determining that she had no status to file objections. The 'appellant argues that the husband’s failure to disclose the extent of his assets or to make any provision for the wife constitutes overreaching which vitiates the agreement.
If he had given to his intended wife a balance sheet showing his assets and liabilities, no question could or would have arisen concerning whether he made 'adequate provision for her. The sole question to be decided upon this appeal is, therefore, whether the wife’s waiver of the right to take under section 18 of the Decedent Estate Law is to be vacated for the reason that the decedent did not tell his wife, when the agreement was signed, how much he was worth. No misrepresentations of his financial means are either found or charged. It was the widow herself who initiated the proposal that each waive any right in the estate of the other. She had an estate of between $300,000 and $400,000 at the time of this marriage, which she manifested a desire to keep intact for the sake of her children by a previous marriage.
The facts surrounding the execution of this mutual waiver agreement are substantially as follows: This was appellant’s second marriage. When she entered into this antenuptial agreement on August 10, 1956, she was a 49-year-old widow with *73 three grown children. She was a woman of some business experience, and had been represented in a number of financial and business matters over a period of years by her personal attorney whose name is Irving Levin, who had knowledge of her assets before meeting decedent or his attorney. Mr. Levin prepared this antenuptial agreement, containing these mutual waivers, at appellant’s request. The effect of this mutual waiver agreement was explained before its execution to appellant and decedent by Mr. Levin and by Mr. Morris Katz, the attorney for the decedent. Mr. Katz testified that he told appellant, in the presence of the decedent and Mr. Levin, that ‘‘ This is an agreement in which each of you waives any right or claim or interest you might have in the estate of the other one, and if that is satisfactory to you, you can sign it. ” Mr. Levin testified that what Mr. Katz said was substantially correct and that he, Levin, had also said to appellant and decedent upon the same occasion that ‘ ‘ this was an agreement between the parties, with a mutual release of interests. ” In answer to appellant’s direct request to him for specific advice as to whether it was all right for her to sign the agreement, Mr. Levin testified that he replied to her as his client ‘ ‘ In my opinion, yes, it is. ” After this conference, appellant and her lawyer Levin conferred privately concerning the proposed agreement.
At some time prior to this private conference between attorney and client, decedent’s attorney, Katz, told appellant’s attorney: ‘'1 said, ‘ Harry Davis, I know, is a well-fixed fellow. I know he has got a lot of property. I know he has property here in New York, he has property I know in New Jersey, he may have property elsewhere. I don’t know about that. ’ ’ ’
There was consideration for this agreement, but, by the 1947 amendment to subdivision 9 of section 18 of the Decedent Estate Law, the statute was amended to provide expressly that ‘ ‘ A waiver or release of the right of election granted in this section shall be effective, in accordance with its terms, whether * * * (d) executed with or without consideration.”
Decedent’s will contained the statement: “ I have made no provision in this, my last will and testament, for my beloved wife, Anne G. Davis, solely for the reason that she and I have *74 heretofore mutually agreed, by an instrument in writing dated August 10, 1956, that neither of us should have or claim any right or interest, of any kind, in or to the estate of the other. ”
The Surrogate found that appellant was advised that the agreement provided for mutual surrender of all rights in and to the estate of the other and that she signed it with knowledge of its provisions and with the firm and settled purpose of preserving her estate for her children,- free from any claims of her husband.
The cases of Pierce v. Pierce (71 N. Y. 154) and Graham v. Graham (143 N. Y. 573), relied upon by appellant, are distinguishable on the same ground stated in Matter of Liberman (4 A D 2d 512, affd. without opn. 5 N Y 2d 719) that in each there was proof of fraud and deception on the part of the husband which induced the wife to enter into the prenuptial agreement. In Liberman and in Matter of Phillips (293 N. Y. 483, 490, 491) it was pointed out that section 18 of the Decedent Estate Law evinced a public policy adverse to a presumption that antenuptial agreements were invalid unless proven otherwise. In Phillips, we said: “ To ascribe to such an agreement inherent fraud without regard to the fairness of its provisions and the reasonableness of the purpose to be accomplished or to the circumstances in which the agreement was proposed, is not, we think, in line with such public policy. ’ ’
It was not necessary to the validity of this agreement that decedent should have disclosed to appellant the extent of his wealth. Referring to the argument for appellant that she was relinquishing an expectancy of greater value than the expectancy relinquished to her by appellant, the Surrogate said: ‘ ‘ What this argument overlooks is that a decision based upon the values of expectancies involves risk, and the respondent was not willing to risk her children’s interest in their patrimony. She was aware of the differences in ages and if she had placed much trust in her longer life expectancy, she would not have insisted upon an agreement to preserve her estate from any claim of her husband. Realizing the uncertainty, she was unwilling to gamble with money which she .felt should go to her children. In seeking to protect her estate against any lawful claim by her husband, she was willing to give him like protection. ’ ’
*75 If she had predeceased her husband he could have asserted no claim against her estate. It requires more than the circumstances here to rule that this agreement gave her the option to abide the event of which died before the other, being sure that if she predeceased him he could not take any of her estate against her children, but leaving it open to her, if old mortality turned the other way, to take against, his will under section 18 of the Decedent Estate Law as though no agreement had been made.
The subject was analyzed by Surrogate Foley in Matter of Market (175 Misc. 570, affd. without opn. 261 App. Div. 950). He referred to .the fact that he had occasion to review the history and legislative intent of that part of section 18 of the Decedent Estate Law which deals with agreements of waiver by a spouse of a right to elect in Matter of Moore (165 Misc. 683, affd. without opn. 254 App. Div. 856, affd. without opn. 280 N. Y. 733). In stating the facts in Matter of Markel, Surrogate Foley said (pp. 571-572):
“ It was also asserted that there was inequality between the prospective wife and husband and that he was a successful business man, the president of a bank in this city, and that she was lacking in business experience and unable to understand her legal rights. The evidence clearly negatives these contentions. Both parties had been previously married. The petitioner had two grown-up daughters. The testator had three grown-up sons. * * * These, and other circumstances in the record, ‘ give rise to implications that she was not lacking in experience or suffering from inequality. ’ (Matter of McGlone, 258 App. Div. 596.)
“ About a month before the agreement was executed in 1935 there had been at least one conference between the testator and his attorney and the prospective wife and her attorney concerning the making of a substantially similar ante-nuptial agreement. Her attorney had known her for many years. He was personally chosen by her * * * It is to be presumed that he discharged his duty to her by disclosing to her such rights. (Matter of Rogers, 250 App. Div. 26.)
“ Stress should also he laid upon the fact that the prospective husband in the same instrument waived any right to elect to *76 take against the will of his prospective ivife. Mutual rights were thus surrendered by both parties, * * *
‘ ‘ In the absence of evidence showing fraud or imposition, she is bound with knowledge of the character and contents of the formal instrument. (Matter of Stone, 272 N. Y. 121; Matter of Schoenewerg, 277 id. 424; Matter of James, 173 Misc. 1042.) ” (Italics supplied.)
Surrogate Vandermeulen of Erie County dealt with the question, with extensive citation of authority, in the case of Matter of Moore (53 Misc 2d 786). He stated that the cases enforced the rule that no presumption arises merely from the close relationship of husband and wife, but that whether a presumption of inequality or constructive fraud arises is a question of fact dependent upon the circumstances of each case. “ Judicial utterances,” said he (p. 790), ‘1 invoked to support a contrary view, are to be found only in cases, otherwise authoritative, where there was affirmative proof of circumstances of inequality which raised a presumption of constructive fraud and shifted to the proponent of the instrument the burden of going forward with proof that it was executed with understanding, without overreaching and free from any vitiating element. ” This rule was applied to waivers of the right to take against the will under subdivision 9 of section 18 of the Decedent Estate Law. In that case, unlike the present, the widow had no legal advice but she did not deny that she had been advised that she was releasing all interest in her husband’s estate except $2,000. The Surrogate said (pp. 791-792): “ While she might not have known his entire worth, nevertheless she must have gleaned enough knowledge from all the circumstances to inform her that $2,000 was considerably less than her intestate share would have been in the event of his death. * * * There was no legal obligation on the part of the deceased to voluntarily inform her of his worth. ”
The order appealed from should be affirmed, with costs to each party payable out of the estate.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan and Keating concur; Judge Breitel taking no part.
Order affirmed, with costs to each party appearing separately and filing separate briefs payable out of the estate.