Millard L. Midonick, S.
Decedent’s widow petitions alleging her right of election against his will. Respondent executor, the adult son of decedent by his first marriage and the primary beneficiary of this estate, opposes petitioner’s election by an affirmative defense in the form of an antenuptial agreement. Respondent’s two daughters have limited interests of $10,000 each by way of legacy and if an election is allowed, their interests would be affected.
In 1956, petitioner, with her daughter by her first marriage, came to this country from Hungary at the age of 37. In Hungary, she had received a formal education through the age of 14. During her first two years in this country, petitioner worked as governess in an English-speaking home. Although petitioner has had contact with our English-speaking community for a period of 19 years, the court’s observation of her while testifying indicates that she still has not acquired proficiency in English conversation. In the early sixties, petitioner met decedent, a successful businessman, and obtained, with the decedent’s help, a divorce from her first husband domiciled in Hungary. On April 23, 1962, petitioner became a naturalized United States citizen. Decedent was born in Hungary in 1902 and emigrated to this country in 1921. He married in 1927 and of this marriage there was one son, the respondent executor.
In late 1964 petitioner, then divorced, married the decedent, then a widower. Shortly prior to this marriage, both parties signed an antenuptial agreement which respondent claims is valid and binding on the petitioner to bar, or constitutes a waiver of her elective rights under EPTL 5-1.1, subd [c]). The petitioner, at the time of execution of this agreement, was approximately 43 years of age and the decedent was 62 years old.
Respondent proved that the prenuptial agreement had been *365 executed by both spouses. The execution took place in the business office of the decedent. Petitioner, decedent, two subscribing witnesses and a commissioner of deeds were present. However no attorney was present at the time of execution. The antenuptial agreement had been drawn solely by decedent’s attorney. Both parties to the agreement and the witnesses signed the agreement, and the commissioner of deeds acknowledged the signatures of the petitioner and the decedent. While formal acknowledgment is necessary for the validity of the waiver of spouse’s election (EPTL 5-1.1, subd [f], par [2]), the notary’s signature and presence was proved by other witnesses available at the trial. There is also in evidence the certificate under seal of the County Clerk of the County of New York, authenticating the status and signature of the commissioner of deeds (CPLR 4520). The agreement was executed in two counterparts. The ribbon counterpart has disappeared and there is an issue of fact whether it was ever in the possession of the widow. The carbon counterpart was returned by the decedent to his attorney who kept it until after decedent’s death. This carbon counterpart was taken apart and restapled after the decedent’s death, by the executor’s attorneys’ office in order to provide the widow with a photocopy. The court is convinced that the separating and restapling of the two pages of the agreement did not alter it.
Respondent has sustained his burden of proof by proving the due execution of the agreement, including acknowledgment, and consequent waiver of the right of election would follow unless petitioner can prove that the agreement does not bar her right of election.
There are fundamental weaknesses in the antenuptial agreement drafted by the decedent’s attorney, which plainly misstates certain "acknowledgments” attributed to the petitioning widow. It is contrary to the facts, except for the second clause below, to recite, as the agreement does: "that Oscar Sunshine has fully acquainted her with his means, resources and income; that he has substantial assets and income; that she has ascertained and weighed all the facts, conditions and circumstances likely to influence her judgment herein; that all matters embodied herein as well as all questions pertinent thereto have been fully, carefully and satisfactorily explained to her; that she acknowledges that she has sought independent counsel thereto from attorneys and advisors of her own selection; that she has given due consideration *366 to such matters and questions, including the situation that she may get less under the agreement than what she may be entitled to under decedent estate law; that she clearly understands and consents to all the provisions hereof.”
Witnesses testified that during the marriage of petitioner and decedent, petitioner complained about the antenuptial agreement. The court finds that these alleged complaints do not reflect full knowledge and understanding of the contents of the agreement when executed. We find that the petitioner at no time until the eve of testator’s death had in her possession a copy of the agreement.
Approximately the week before the death of her husband in November, 1971, petitioner wrote a letter to decedent’s attorney. In it the petitioner asserted that she understood that she had signed a "waiver” of any interest in her husband’s business (a major asset of the estate) and petitioner requested a copy of the waiver. The attorney, upon decedent’s instructions, sent petitioner such a copy.
Respondent has asserted estoppel and laches as defenses to petitioner’s right of election, based in part upon the passage of time since the date of alleged waiver by the antenuptial agreement, citing Matter of Lemle (30 AD2d 785, revg 55 Misc 2d 640) which had stricken such defenses on the pleadings. However, petitioner cannot be estopped for her failure to attempt to set aside this agreement during the lifetime of decedent. Decedent, according to several witnesses, assured petitioner that he destroyed the agreement and that she would be well provided for upon his death. Whether or not he had misled her by statements that the agreement was no longer effective or existing, it is doubtful whether such a cause of action had matured during decedent’s lifetime.
Petitioner was and still is unsophisticated and naive about business and legal matters. She is relatively uneducated, has had virtually no true business experience, and consequently she could not understand the factual impact of the agreement. She seems to have known what she was promised by the agreement, but, contrary to its recitals, she was uninformed about the value of what she was giving up. It is difficult to estimate even today what is the value of a bare majority interest in a closely held business manufacturing pillows, most of the remaining shares outstanding being held by the son of the testator who is the only remaining major executive. The other major asset of the estate was real estate not sold until *367 after testator’s death. The court finds that petitioner had no opportunity to read the agreement before its execution.
Inequality between the cosignors of antenuptial agreements has been the subject of much discussion. Inequality has been weighed by considering the circumstances surrounding execution of the agreement and by evaluating the basic relationship between husband and wife. (Donlon v Donlon, 154 App Div 212, 216, 217; Matter of Rogers, 250 App Div 26, lv to app den 274 NY 642.)
The court finds that decedent was far more knowledgeable than petitioner concerning the economic impact of the ante-nuptial agreement and that he was in the position to explain it or to insist that she obtain counsel to explain it to her.
The widow has the burden of proving that she did not deal with the testator on an equal basis (Matter of Moore, 53 Misc 2d 786). In Moore, the widow claimed that she did not know her husband’s worth. However, in Moore, the widow, unlike petitioner in the instant case, had a copy of the proposed final agreement during four days before she signed the agreement. The court held in Moore that the widow’s failure to consult a lawyer was immaterial under the circumstances since she failed to take advantage of the opportunity afforded her.
Petitioner, the court finds, did not have a copy of the agreement before its execution and she did not have an opportunity to consult any attorney, certainly not one of her own choosing, prior to or on the occasion of the execution.
In Matter of Baruch (205 Misc 1122, affd 286 App Div 869) the widow was a highly intelligent woman who spoke several languages including English. The widow was aware that although she was a woman of modest means, the decedent was a man of wealth. She complained after the death of her husband, that she had no counsel at the time of execution of an antenuptial agreement and that she had no knowledge of the nature and consequences of the agreement which the widow admitted that she read, signed and acknowledged. However, at the signing of the agreement, the lawyers testified that the husband’s attorney explained the legal consequences of the agreement to the widow. The court, in Baruch, held the agreement binding on the widow. The position of the Baruch widow is quite different from the position of petitioner in the instant case. Petitioner has limited understanding of English today, and the court finds that eleven years ago her understanding of English was even less. The petitioner was substan *368 tially ignorant of the extent and value of decedent’s assets. His major asset was and still is his majority interest in his pillow manufacturing corporation from which respondent earned a salary of $50,000 plus pension contributions, and at the time of decedent’s death, his son was earning equal benefits. At the time of death, this business was grossing $1,500,000 annually. Also among his substantial assets was commercial real estate. Both of these assets were by their nature difficult to appraise, even if an attempt had been made to indoctrinate her to the point where she could make an informed waiver. Matter of Davis (20 NY2d 70) held that an antenuptial agreement was binding on the widow even though the fiance did not disclose the extent of his wealth prior to the execution of the agreement and held that the widow was precluded from electing to take against the will which made no provision for her. However, no false acknowledgments expressed in the agreement were placed in the mouth of the spouse in Davis. Also unlike petitioner here, the Davis widow was a wealthy woman in her own right. She suggested that she and her fiancé make such an agreement. She had many years of business experience. That widow’s attorney who represented her for many years in her business affairs prepared the antenuptial agreement at her request. Furthermore, there were at least two conferences before signature to decide if the agreement was satisfactory to the widow. Unlike petitioner in the instant case, the Davis widow acted upon a considered decision to preserve her estate for her children free from any claims of her husband. Petitioner, on the contrary, had no assets of any substance.
It is clear from the cases cited that an antenuptial agreement may effectively waive the spouse’s right of election where the spouse has business expertise despite lack of legal representation (Matter of Davis, supra; Matter of Baruch, supra), or in the case of a woman with legal representation despite no knowledge of her spouse’s assets (Matter of Markel, 175 Misc 570, affd without opn 261 App Div 950; Matter of Wildstein, NYLJ, Feb 10, 1971, p 18, col 4), or even bar a spouse with a good working knowledge of English who has the advantage of a copy of the agreement rseveral days before execution (Matter of Moore, supra). However, an antenuptial agreement should not bind this petitioner who did not have business expertise, did not have legal representation, did not understand or speak English well, did not have a copy of the *369 agreement before execution, and who did not have any reasonable way to learn the extent of her fiance’s personal net worth including his control of a closely held business asset.
The circumstances of the execution reveal inequality in positions between the parties amounting to substantial disadvantage for the wife-to-be, and consequent overreaching by the decedent in a situation where the petitioner was entitled to rely on a confidential relationship even absent fraud. (Cf Graham v Graham, 143 NY 573.)
By the waiver agreement, petitioner takes in effect the benefit of $25,000 under the will and $25,000 by decedent’s life insurance. By the election, she would benefit by an additional $50,000 or more. The simple fact which emerges indicates that the provision for petitioner was disproportionate to her intended husband’s means; that decedent did not provide adequately by insurance or otherwise for a faithful wife of seven years; nor did he follow the terms of his own lawyer’s form of agreement which specified that she was to have the help of her own counsel and know the extent of his assets. At her age and with her inability to support herself properly, it seems basically unfair to limit her to relatively inadequate funds after bereavement, when he had been liable to support her appropriately until the moment of his death. (Domestic Relations Law, § 236; Family Ct Act, § 412; cf Pierce v Pierce, 71 NY 154; but cf Matter of Phillips, 293 NY 483.) His only son and offspring is adult, managing the manufacturing business, and able to care for his family’s needs. The Legislature having eliminated the widow’s common-law dower right and substituted her elective right, waiver of that right should be sustained only if knowledgeably effected and in the absence of overreaching. (See Matter of Rogers, 250 App Div 26, 28-29, supra.)
The fact that petitioner, as beneficiary, has collected proceeds from decedent’s life insurance policy which was mentioned in the agreement as a part of the consideration, does not create an estoppel. By her action she has merely received an amount of money which she would be entitled to in any event, either pursuant to the agreement, if valid, or pursuant to her statutory right of election upon cancellation of the agreement. The waiver agreement is a contract (cf. Matter of Lemle, 30 AD2d 785, supra) which the widow is, in effect, seeking to cancel and rescind. While it is true that a party is not entitled to relief by cancellation or rescission while he or *370 she retains the benefits of the contract (Brennen v National Equit. Inv. Co., 247 NY 486) "where what a party has received consists only of money, the amount of which he will be entitled to in any event, he need not make offer of restitution” (E.T.C. Corp. v Title Guar. & Trust Co., 271 NY 124, 128; Gould v Cayuga County Nat. Bank, 86 NY 75; Gordon v Pushkoff, 67 NYS2d 873, affd 272 App Div 872). The act of the widow was not inconsistent with her position as to the invalidity of the agreement. As a consequence of cancellation of the contract, however, the amount of all moneys paid thereunder to the widow or to her daughter must be offset against any money due to the widow pursuant to her statutory right of election; any other determination would allow the widow to benefit from the canceled agreement.
The court finds that petitioner has not waived her right to elect against the will of decedent and has a limited right to elect against the will in accordance with this decision.